FILED - USDC -NH
2024 JUL 19 AM11:53

1

2 **UNITED STATES DISTRICT COURT**

3 **FOR THE DISTRICT COURT OF NEW HAMPSHIRE**

4

5

6

7

8 DUSTY BUTTON AND MITCHELL          | Case No:
TAYLOR BUTTON

9

10                                    | **COMPLAINT AND DEMAND FOR**
                                       | **JURY TRIAL**

11              PLAINTIFFS,

12 V.

13

14 PATRICK HICKLE, ELIZABETH HICKLE,
ROBIN MELONE and KATHERINE

15 THONIS

16

17              DEFENDANTS.

18

19

20

21          Plaintiffs Dusty Button and Mitchell Taylor Button file this Complaint and sue

22 Defendants Patrick and Elizabeth Hickle, Katherine Thonis and Robin Melone and allege as

23 follows:

24                    **PRELIMINARY STATEMENT**

25   1.   This action arises from the *heinous* and *egregious* allegations made by a mentally

26        unstable and delusional woman whom **Plaintiffs have never met, heard of, or**

27        **spoken to in their entire lives** but who is the ███████ of Patrick and Elizabeth Hickle

28

and the client of licensed clinical social worker Katherine Thonis and criminal defense attorney Robin Melone.

2. Defendants Patrick and Elizabeth Hickle are the ▓▓ of ▓▓▓▓▓▓▓, "▓▓▓▓", (referred to herein as Jane Doe[1]), who is the primary subject of this action, as the claims stated herein against the Defendants **should have been prevented** but instead, Defendants aided and abetted Jane Doe's fraud by concealment of that fraud and neglected their duties while intentionally withholding imperative information *even after* being Court Ordered to provide that information, in order to defraud and defame Plaintiffs.

3. Defendants had actual knowledge that their ▓▓▓ and their client was committing harm and fraud against Plaintiffs and did nothing to prevent it. In fact, they aided her fraud against Plaintiffs, severely and irreparably destroying everything Plaintiffs have ever worked for.

4. Defendants have maliciously aided and abetted Jane Doe, going to great lengths to assist her in concealing her fraud against Plaintiffs for **three years,** while knowing she **would** and **has,** *completely destroyed* Plaintiffs' lives, careers, reputations, mental well-being and overall health as had a duty to prevent Jane Doe from targeting Plaintiffs and committing egregious acts of fraud against them by filing false allegations against two innocent people who **she has never met in her entire life.**

---

[1] On September 23rd, 2021, the ▓▓▓ of Patrick and Elizabeth Hickle, (▓▓▓▓), sued Plaintiffs, (whom Plaintiffs have never met, spoken to, or heard of in their entire life until she sued them), for rape at gunpoint and claiming Plaintiff Dusty Button videotaped the entire assault - (See Nevada District Court case - 2:21-cv-01412-ART-EJY at ECF No. 35 id at pgs. 17-19). She is identified as Jane Doe 100 in the Nevada litigation pursuant to the Court's Order of granted leave to proceed anonymously at ECF No.39, later identified as Jane Doe 1 following Plaintiffs' motion to strike 100, as her counsel used the identification number 100 to sensationalize the complaint in the media, which was granted. Further, Plaintiffs filed a Rule 11 sanction against her and her counsel, resulting in ECF No. 221, "the Third Amended Complaint). Plaintiffs do not know this woman but have since deposed her via Zoom, resulting in the instant litigation for the claims set forth herein.

5. On September 23rd, 2021, Jane Doe filed a fraudulent and malicious lawsuit against Plaintiffs in the District Court of Nevada, claiming **repulsive** and **deliberately untrue** allegations of rape at gunpoint as a minor in 2014 including horrific allegations of sexual exploitation; such as falsely alleging that Plaintiff Dusty Button videotaped her during the delusional, alleged sexual assault, (which **never took place**).

6. Her fraudulent allegations do not stop there; Jane Doe also alleges she was drugged as a minor at a party in Boston, MA, which she alleges to have attended with Plaintiffs, (**which never occurred**).

7. Jane Doe alleges that she was later taken to Plaintiffs' home where she then alleges the assault took place.

8. Plaintiffs deposed Jane Doe on June 29th, 2024 where she stated in her deposition that the next morning, she awoke in her ▆▆▆ home at ▆▆▆▆▆ Rd. New Hampshire, who she alleges picked her up the evening of the alleged assault from the Buttons' home, as she stated she did not have a driver's license to get to and from Boston to New Hampshire in the year of 2014, where she resided with her ▆▆▆ until she went to college in New York, in August of 2015.

9. These allegations are not the only false allegations stated against Plaintiffs in Nevada but are amongst the most disturbing and harmful to Plaintiffs.

10. Other disgusting, offensively fraudulent but harrowing detailed allegations of a delusional event **which never took place** are stated further herein which were known to be fraudulent by Defendants including because Plaintiffs **have never met Jane Doe in their entire lives**.

11. Jane Doe, (who is protected by a pseudonym to relieve her of *any and all* responsibility to the public), is suing Plaintiffs for over **$18,000,000.00.**

12. The three years of pending litigation in Nevada has only **confirmed** that Jane Doe is a *pathological liar* who is seriously and clinically **mentally unstable**, *delusional* and a *harm to herself and others* including Plaintiffs.

13. Jane Doe has garnered mass media attention[2] from nearly *every* main stream media publication and news outlet regarding her fraudulent, malicious and delusional allegations resulting in **complete destruction** of *everything* Plaintiffs **have ever worked for**.

14. This case is about Defendants despicable conduct in allowing Jane Doe to *severely* harm and *destroy* the lives of two innocent people.

15. This case is about wo███ a social worker and a criminal defense attorney who breached their duties to their ███ their client and to Plaintiffs by not only allowing Jane Doe to commit fraud but by *aiding and abetting* her fraud and neglecting to warn and protect from the foreseeable harm which would have otherwise been prevented if it were not for their negligence and conspiracy to conceal Jane Doe's fraud.

---

[2] As just a few examples, Jane Doe is not identified in the articles as her true identity but referred to as Jane Doe 1 in the following articles: https://www.boston.com/news/crime/2021/09/28/dusty-button-boston-ballet-new-sexual-assault-allegations/ - the Boston Globe on Sept. 28th, 2021 ; ABC7 https://abc7ny.com/dusty-button-ballet-dancer-mitchell-taylor-ballerina-sexual-assault-lawsuit-boston/11068473/ on Oct. 1st, 2021 ; https://people.com/crime/dusty-button-former-boston-ballerina-husband-accused-sexually-assaulting-dance-students/ - People Magazine on Sept. 30th, 2021 ; https://x.com/i/events/1443231650440171523?lang=en on Sept. 29th, 2021 whereas Jane Doe stated: The second dancer who came forward, identified only as Jane Doe 100, said she hopes the case will protect future dancers from harm, stating, "Together, I believe, we can stop the accused from ever damaging another young dancer."

16. Other cases have presented themselves in a similar light whereas, the perpatrator's therapist, ▮▮▮▮ and (in this case), the attorney had a duty to warn[3]; Jane Doe's case against Plaintiffs is *particularly egregious* because Plaintiffs **have never met**, **heard of, or spoken to her** until they deposed her via Zoom on June 29th, 2023, as part of the Nevada litigation discovery process.

17. During the deposition of Jane Doe she stated, "I don't recall", nearly **three hundred times**.

18. Plaintiffs have since had contact through discovery issued subpoenas with Patrick and Elizabeth Hickle, (on April 9th and 10th of 2023) and Robin Melone (on September 19th, 21st and 27th, 2023), as well as a legally recorded telephonic call to Katherine Thonis, (following Jane Doe's deposition, sometime in or around the month of July, 2023); all of which further prove each Defendant *intentionally concealed pertinent information* in order to aid the fraud that either their ▮▮▮▮ or their client committed, making Jane Doe's false allegations successful.

---

[3] See - ***Tarasoff v. Regents of the University of California***, 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (Cal. 1976) - A case in which the Supreme Court of California held that mental health professionals have a duty to protect individuals who are being threatened with bodily harm by a patient. The original 1974 decision mandated warning the threatened individual, but a 1976 rehearing of the case by the California Supreme Court called for a "duty to protect" the intended victim. The professional may discharge the duty in several ways, including notifying police, warning the intended victim, and/or taking other reasonable steps to protect the threatened individual.

19. Further, through deposition testimony of Jane Doe, Plaintiffs have confirmed the involvement of the Defendants in this case which verifies each of Plaintiffs' claims in this complaint and every cause of action alleged herein.

20. It is unclear from the record exactly when evidence of Jane Doe's problems first arose however, the record is clear that at least by 2012 Jane Doe began verbalizing scenarios and situations she was experiencing to her █████ and her therapists, that reflected severe instability in her mental health including on at least two occasions resulting in being committed to the Pathways Unit, (a psychiatric care unit), at Elliot Hospital in New Hampshire, where her █████ was a doctor[4].

21. As another instance, it was confirmed via discovery and therapy records that Jane Doe felt she was ignored by her █████ and craved attention that her █████ only gave to her █████ seemingly caused by Jane Doe's bullying at school from sending nude photos to a boy in 2013, which were passed around her school and resulting, (according to Jane Doe) in her █████ (in Jane Doe's words), slut shaming her, leading to her first suicide attempt at the age of fifteen.

22. Jane Doe's █████ was adamant about Jane Doe going to school, which she refused to do as a result of the bullying which occurred at school from the loss of friends as she stated in her therapy records that her friends accused her of lying and plagiarism.

23. Jane Doe's █████ used extreme measures to ensure their █████ deeply rooted mental instability was not exposed, including by demanding the hospital keep her

---

[4] Deposition of Jane Doe: Why were you put on trazodone? A. Because I was suicidal and having panic attacks. Q. Who put you on this trazodone? A. It was a doctor in the psychiatric unit I was in. Q. What was this doctor's name? A. Doctor Yudati (phonetic) I believe. Q. Can you spell that? A. I don't know how to spell it. Q. Where was this psychiatric unit? A. It was the Pathways unit at Elliot Hospital in Manchester, New Hampshire. Q. Did your █████ work for this hospital? A. Yes.

COMPLAINT AND DEMAND FOR JURY TRIAL

mental instability and suicide attempt from the school thus putting anyone in her path at risk.

24. Jane Doe's therapy records reveal that she had high risk behavior of physical aggression such as, "throwing items, putting holes in walls and tipping over chairs".

25. Jane Doe's therapy records on February 25th, 2013 state the following:

- "Major depression, generalized anxiety disorder, reports regular panic attacks".
- "On 2/7, she spilled Tylenol on the floor where ███ would see and says she took 10 of them."
- "███ do not want school contacted".
- "Pt states, I basically have no friends".
- "Pt reports, school issues and bullying".
- "Talks with a British accent".
- "Was supposed to be admitted to hampstead on 2/23/13, but had panic attack and ███ took her home before she was actually admitted".
- "Reports no history of trauma, aggressive towards ███
- "States ███ is controlling and competes with ███ for ███ attention".

26. Jane Doe's therapy records consists of the entire year of 2014 where she does not once mention the Plaintiffs or any abuse including any such allegations which she brought forward against Plaintiffs in 2021; in fact, the entire year of therapy notes, (obtained in discovery by Plaintiffs through Jane Doe's counsel), in 2014 consists of Jane Doe stating she was suffering from anxiety, stress, eating disorders, conflicts with her ███ bullying at school, arguments with friends at school leading to refusal to go to

COMPLAINT AND DEMAND FOR JURY TRIAL

school, aggression toward her ███ "bad break ups" with boyfriends and concerns

over not dancing or becoming a good dancer, amongst other statements which she

made in every month of 2014 but not once does Jane Doe discuss Plaintiffs in any way

or even remotely address such egregious allegations as she stated in her complaint in

Nevada; the reason, because **she has never met Plaintiffs in her entire life**.

27. Jane Doe maliciously targeted and blamed Plaintiffs for her mental issues and

conditions which she had for over nine years prior to making her false, fraudulent and

malicious allegations in Nevada.

28. Jane Doe's therapy records on August 14th, 2017 state the following:

- "Describes her ███ as controlling".

- "Denies any history of physical or sexual abuse".

- "Pt comes with a five-year history of depression and anxiety".

- "Pt believes anxiety is related to some conflicts with friends at school."

- "She denies feeling depressed and is able to enjoy herself".

- "Pt is worried about her weight and her ███ has history of anorexia and is
  recovering".

- "There is a history of one suicidal gesture in which she took about 15
  Tylenol pills at the age of 15. She was hospitalized for 4 days, although did
  'not believe she would die.' She stated it was for 'attention'.

- "She is in therapy, by phone, with her therapist Ms. Kathie Thonis, in New
  Hampshire".

29. The forementioned statements from Jane Doe's therapy records are *just a fraction* of

what those records state in relation to her mental health, her family's awareness of her

COMPLAINT AND DEMAND FOR JURY TRIAL

mental health issues and her family's concealment in preventing others who would be harmed by her mental health from knowing Jane Doe was a harm to herself and others.

30. Defendants were negligent in providing the treatment Jane Doe needed resulting in the culmination of events leading up to the fraudulent and false allegations which have now completely destroyed Plaintiffs', (who have never met Jane Doe), entire lives.

31. The therapy records consisting of irrefutable evidence, verified the true nature and foundation of instability and self-harming tendencies of Jane Doe however, with seeing the opportunity for the attention she desired but did not receive from her family and friends, Jane Doe decided to join the already false narrative pinned against Plaintiffs, choosing Plaintiffs as martyrs and a target to displace the true causes of her deranged mental state, claiming the cause of her attempted suicide was actually due to the assault against her in 2014 committed by Plaintiffs, who she has never met.

32. Defendants knew the allegations were false in their entirety as there were entirely familiar with Jane Doe's delusions, her therapy records and her admittance into the Pathways Unit as they admitted her the first time.

33. Jane Doe's ▮▮▮▮ had actual knowledge of the underlying cause of their ▮▮▮▮ suicide attempt and in fact, covered up her admittance into the Pathways Unit by demanding the hospital keep the admittance from the school.

34. As another example, in 2013, when Jane Doe was speaking in total confidence to her therapist, as she was committed for attempted suicide on the basis of wanting more attention from her family and severe bullying, after stating countless times to therapist that she **had never been a victim of assault or sexual assault** she then, in 2021, misappropriated the fact that she had been in therapy by masking the actual records,

perjuring herself and lying to the media and that she had *actually* attempted suicide because of the assault she alleges took place in 2014 by Plaintiffs **who she has never met in her entire life.**

35. Defendants had actual knowledge of Jane Doe's original therapy records and history of her delusion and should have prevented Jane Doe from committing such fraud or otherwise, upon discovery of her false allegations should have protected and warned per their duty requirements as a parent, social worker and attorney.

36. As a result of Defendants' conduct, the outlandish, repulsive and defamatory statements made online and through communications with Plaintiffs' employers, sponsors and business relationships resulted in complete loss of any and all income, employment, business and reputation, ultimately terminating Plaintiffs' careers in both of their respective industries as well as their good names, rendering them forever unemployable.

37. This case is *proof* that a mental unstable woman can falsely and brazenly accuse two people **who she has never met in her entire life** of criminal acts, which never occurred and can in fact, be successful in destroying the lives of those innocent people regardless of falsity of those allegations especially when there is support and encouragement to continue committing such a fraudulent scheme.

38. Patrick and Elizabeth Hickle could have and should have prevented their ▮▮▮▮ from causing harm upon Plaintiffs; they did not.

39. Katherine Thonis could have and should have prevented her client from causing harm upon Plaintiffs; she did not.

40. Robin Melone could have and should have prevented her client from causing harm upon Plaintiffs; she did not.

41. As set forth herein, Patrick and Elizabeth Hickle's actions cannot be justified by any reason other than the fact that they were maliciously and intentionally done so to harm and destroy Plaintiffs, to distract from their negligence in preventing their mentally unstable ▄▄▄▄ from harming others, choosing to assist in concealing her fraud in conspiracy with Defendants Thonis and Melone, who *aided and abetted* Jane Doe while breaching their duties to **protect** and **warn,** encouraging their client to commit fraud which ultimately resulted in the harm and destruction of **two innocent lives who have never met Jane Doe**.

## THE PARTIES

42. Plaintiff Dusty Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina; Ms. Button is the wife of Plaintiff Taylor Button.

43. Plaintiff Taylor Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina; Mr. Button is the husband of Plaintiff Dusty Button.

44. Upon information and belief, Defendant Patrick Hickle is an individual who resides and is domiciled in Bedford, NH.

45. Upon information and belief, Defendant Elizabeth Hickle is an individual who resides and is domiciled in Bedford, NH.

46. Upon information and belief, Defendant Robin Melone is an individual who resides and is domiciled in Concord, NH.

47. Upon information and belief, Defendant Katherine Thonis is an individual who resides and is domiciled in Manchester, NH.

## JURISDICTION AND VENUE

48. Plaintiffs are citizens of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C § 1332.

49. Defendants are citizens of the State of New Hampshire for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

50. This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

51. Pursuant to 28 U.S.C § 1391(b), venue is proper in this Court because the Defendants reside in this district.

52. The Court has general jurisdiction over Defendants as they are residents of this State.

## FACTUAL BACKGROUND

53. Plaintiff Dusty Button was a *world-renowned* ballerina who trained at the Jacqueline Kennedy Onassis School at the American Ballet Theatre in New York City.

54. In 2007, she joined the Royal Ballet School in London and in 2008 she joined Birmingham Royal Ballet in England.

55. In 2011, Ms. Button danced with American Ballet Theatre.

56. Ms. Button is best known for her work with the Boston Ballet, which she joined in 2012 and was promoted to their highest position of principal ballerina in 2014.

57. Ms. Button was Red Bull's first and only ballet athlete and has been published in media publications across the globe and has positively influenced hundreds of

thousands of people nationally and internationally, including by performing and teaching in over thirty different countries and across the United States.

58. Plaintiff Dusty Button's Instagram account, @dusty_button, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

59. Ms. Button deleted her Instagram account in 2021 after succumbing to trauma from severe cyber bullying and harassment which Plaintiff endured as a direct result of Defendants' conduct.

60. Plaintiff Mitchell Taylor Button, (Taylor Button), was one of the world's *most influential* custom Ferrari and military vehicle designers and builders for seven years, approximately from 2014 – 2021, with his work having been published in media publications across the globe for his automotive design, builds and work in the industry.

61. Plaintiff has positively influenced hundreds of thousands of people nationally and internationally and has been procured from global organizations for speaking engagements and commissions that continue to live on with his legacy today despite the destruction of his life's work by Defendants.

62. Plaintiff Taylor Button's Instagram account, @button_built, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

63. Plaintiff Taylor Button deleted his Instagram account in 2021 after succumbing to trauma from severe cyber bullying and harassment which Plaintiff endured as a direct result of Defendants' conduct.

64. As explained further herein, Plaintiffs' names and likeness *was* their business and generated one hundred percent of their yearly revenue whereas, Plaintiffs, themselves

13

COMPLAINT AND DEMAND FOR JURY TRIAL

and what they provided to their respective industries was *solely* based on what they provided as their name brands, known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand, Bravado by Dusty Button, Meisturwerk and Meisturwerk Machinen.

65. Plaintiffs' established businesses, goods and services were directly sourced and provided from their good names, talent, expertise, reputations, skills, manufacturing and marketing capabilities, which were **completely destroyed** by Defendants.

66. At the time of the events described herein; upon belief, Patrick Hickle was a cardiologist at Elliot Hospital.

67. Upon belief, Defendant is still a licensed, practicing cardiologist.

68. At the time of the events described herein and upon belief, Katherine Thonis was a licensed clinical social worker in Manchester, NH who Patrick and Elizabeth Hickle paid to counsel their ██████ for years.

69. Upon belief, Ms. Thonis is still a licensed, practicing clinical social worker in New Hampshire.

70. At the time of the events described herein and upon belief, Robin Melone was a criminal defense attorney in Manchester, NH at Melone Law, who was on retainer for Patrick and Elizabeth Hickle and a "family friend" of the Hickles, including their ██████ Jane Doe.

71. Upon belief, Ms. Melone is still a licensed practicing attorney specializing in Trauma Informed Civil Rights at Pastori Krans.

72. A culture of defamation permeates and plagues the #MeToo movement, particularly in the entertainment industries and has in turn, destroyed the credibility of real victims

1
2
3
4
5
6

everywhere, while simultaneously mocking the judicial system and enabling people to
weaponize the civil justice system with false accusations which ultimately have the
same consequence on innocent lives as they would if they were true accusations
against guilty parties, rendering Courts and parties afraid to defend against claims of
this magnitude due to the inevitable nuclear social fallout.

7
8
9
10
11
12
13
14
15

73. The culture of defamation has dialed the integrity of civil litigation back decades, as
recently seen in cases around the world such as Depp v. Heard[5], Bauer v. Hill[6], Bieber
v. Yeates[7], Nestler v. Letterman[8] and the Eleanor Williams[9] case in England, all of
which proved *innocent* parties' lives were *completely destroyed* by false and
defamatory statements not only in litigation, but in the media and in the press;
including in the case of Letterman, defending against a woman he had never met but
who obtained a fraudulent restraining order against him which was later, dropped in its
entirety.

16
17
18
19
20
21

74. Other prominent dancers have been publicly defamed and severely harassed in past
years, through fraudulent and defamatory statements including but not limited to
British dancer and choreographer Liam Scarlett, who sadly took his own life as a
direct cause of false and defamatory statements in the media and through industry
gossip.

22
23
24
25
26
27
28

---

[5] See Depp v. Heard, No. CL-2019-2911 (Va. Cir. Ct. Jul. 25, 2019)
[6] See Trevor Bauer v. Lindsey C. Hill (8:22-cv-00868) District Court, C.D. California
[7] See Yeater v. Bieber (Ds46567-GCJ) Superior Court of California, County of San Diego
[8] See https://casetext.com/case/fisk-v-letterman
[9] See - https://www.judiciary.uk/wp-content/uploads/2023/03/R-v-Eleanor-Williams-sentencing.pdf

15
COMPLAINT AND DEMAND FOR JURY TRIAL

*"We feel Liam would not have taken his life if his name hadn't been dragged through the press with inaccurate allegations"*, stated by Deborah Scarlett, Liam's mother.

75. Liam Scarlett was cleared of any wrongdoing, but only *after* his death which included the false and defamatory statements of misconduct with ▮▮▮▮▮ which were *all proven to be false* statements but which were never acknowledged or rectified by any media source **to date**, much like the false and defamatory statements made by Jane Doe, which could have been prevented if it were not for Defendants' reckless and negligent conduct.

76. Plaintiffs have suffered *unimaginable* loss to their businesses, careers, reputations, finances, mental health, and overall livelihood and will continue to suffer as a direct and proximate result of Jane Doe's false allegations and Defendants' conduct for the painfully foreseeable future.

77. Plaintiffs are currently enrolled into government assisted programs in South Carolina, such as SNAP for food and Medicaid, as Plaintiffs are expecting their first child in the beginning of August, 2024.

78. Plaintiffs have had absolutely *no income* and have had no ability to generate income due to Defendants' conduct resulting in Jane Doe's confidence in pursuing Plaintiffs and the egregious false allegations attached to their names resulting in being prevented from generating *no income* as a direct result of Defendants' intentional infliction of emotional distress and harm on Plaintiffs which took everything that they have ever worked for and very nearly, their lives.

79. As explained further herein, Defendants **intentionally, willfully** and **maliciously destroyed** Plaintiffs' livelihoods, businesses and future ability to generate work or income in both of their respective industries for the foreseeable future, as their names, likeness and reputations were their careers, which were *obliterated* as a direct result of Defendants' conduct.

80. Defendants are not only responsible for their own actions but for those of Jane Doe, as no preventative measure was taken by any Defendant to ensure no harm would come to third parties who would fall victim to Jane Doe's delusion and harm.

### A. The Nevada District Court Matters Filed on July 28th, 2021

81. On July 28th, 2021, Sage Humphries, (Plaintiffs ex-girlfriend) and Gina Menichino, (former dance student at Centerstage Dance Academy in Florida over fourteen years ago), filed a (frivolous and malicious), civil complaint against Plaintiff in this case, Taylor Button[10].

82. Plaintiffs discovered through the headlining front-page publishing of The New York Times that this complaint was filed, *prior* to Plaintiff Taylor Button *even being served*[11].

---

[10] See Nevada District Court Case: 2:21-cv-01412-ART-EJY
[11] https://www.nytimes.com/2021/07/29/arts/dance/mitchell-button-dusty-button-abuse.html - New York Times article published on July 29th, 2021 prior to Taylor Button ever being served with the complaint.

83. On June 29th, 2023, Plaintiffs deposed Jane Doe whereas, Jane Doe admittedly, read the New York Times article in addition to a social media post[12] which prompted her to "come forward" with her delusional and false allegations of sexual assault[13].

84. Prior to coming forward, Jane Doe made an appointment with an *entirely new therapist* instead of Defendant Thonis, where it was written in her therapy notes for the first time in all her years of therapy that she was sexually assaulted at the age of fifteen[14].

85. On August 3rd, 2021, (just six days after the article was published), Jane Doe's therapy records state for the first time, *"reports sexual assault at age 15"* and *"experiences were reported to police and both the individual who is responsible and the wife who assisted face charges"*.

86. Twenty days later and on Sept. 23rd, 2021, Jane Doe became a Plaintiff in the Nevada litigation however, her complaint states the allegations against Defendants took place in 2014, when she would have been seventeen and not fifteen, though the allegations in their entirety are false.

---

[12] On May 13th, 2021, Madison Breshears, best friend of Sage Humphries, (Plaintiff in the Nevada litigation and former ex-girlfriend of Plaintiffs') posted an initial online bullying and harassing defamatory campaign against Dusty and Taylor Button. Ms. Breshears' original post stated: PSA: Dusty Button is a sexual predator who preys on young girls to use for sex acts with herself and her husband". Ms. Breshears is currently being sued for her defamation, amongst other claims, by Plaintiffs Dusty and Taylor Button in the Southern District Court of New York – Case 1:24-cv-03757-MKV.

[13] Deposition of Jane Doe: "Q. How did you first learn of this lawsuit? A. I had got -- I don't recall if I read, I think it was The New York Times article that came out first. I don't remember if I read that article first or a bunch of people that I still follow that are in the dance industry or I danced with growing up had posted something about it on a story or something. I don't recall which I saw first, but that's how I learned about it."

[14] Sigrid McCawley in conspiracy with Defendants in this litigation advised Jane Doe 1 to see a therapist outside the network of therapists that she had previously seen for the vast majority of her life, to have record of her allegations against Plaintiffs, as all previous therapy records show no record of abuse or sexual assault of any kind.

87. Jane Doe's complaint states, "*Jane Doe 1 met the Buttons in 2014 when she was a minor*" - ECF No. 35 *id* pg. 17 of the Second Amended Complaint and "*Upon information and belief, the rape occurred in 2014*" ECF No. 221 *id* pg. 18 of the Third Amended Complaint, as counsel filed an amended complaint pursuant to Defendants Rule 11 Motion against her and her counsel.

88. Jane Doe's therapy records from Aug. 3rd, 2021, state an entirely contradictory year to her complaint in Nevada as she alleged (for the first time), that she was assaulted at age 15, (in 2012), *twenty days prior* to filing her complaint which states an entirely different year and which was never stated in any previous therapy record.

89. Defendants had *actual knowledge* of Jane Doe's fraud and knew that her allegations stated were impossible as they were responsible for their ███ and their client[15].

90. The allegations brought forth by Sage Humphries and Gina Menichino are false in their entirety however, these complaints prove Jane Doe's fraud further, as her false and defamatory allegations and statements about Plaintiffs *are not* supported by their allegations *even if* the allegations were true, (they are not).

91. Jane Doe has been kicked out of school twice for plagiarism, and has additionally "lost friends" due to plagiarism, (as stated by Jane Doe in her therapy records), whereas her ███ her social worker and her attorney had *actual knowledge* of her compulsive acts of plagiarism which resulted in severe consequences from the school

---

[15] Deposition of Jane Doe: "My insurance and my ███ paid for my therapy and medication and healthcare".

when she was fifteen[16] and again when she was in college in 2015 including being suspended from college at Marymount Manhattan College[17].

92. On September 23rd, 2021, Plaintiffs were met with an amended complaint which included (false) allegations from Plaintiff Taylor Button's ex-girlfriend Danielle Gutierrez and Rosemarie DeAngelo, (another woman from the same dance studio in 2009), and **a woman they have never met**, Jane Doe.[18]

93. The allegations brought forth by the litigants in the amended complaint are false in their entirety however, the allegations brought forth by Danielle Dominguez and Rosemarie DeAngelo prove Jane Doe's defamation further, as her false and defamatory allegations and statements about Plaintiffs *are not* supported by either of the other women's allegations *even if* the allegations in the complaint were true, (they are not); and the *significant* difference here is that **Plaintiffs have never met or heard of Jane Doe,** as she is a *total stranger*.

94. Jane Doe was granted leave to proceed anonymously as Jane Doe 1 shortly after she became a Plaintiff in the Nevada litigation and has remained so for three years[19].

95. Plaintiff Dusty Button has never met Danielle Gutierrez or Rosemarie DeAngelo.

96. Jane Doe's allegations are *nearly identical* to that of Sage Humphries' complaint however, aside from Plaintiffs never having met her, her allegations and the timeline

---

[17] Deposition of Jane Doe: "So you left college at some point? A. Yes. Q. Why did you leave? A. I left because I was suspended. Q. What were you suspended for? A. Cheating. Q. They accepted you back in after that? A. Yes. Q. What did you cheat on? A. A paper."

[18] Sigrid McCawley originally filed Jane Doe 1 as Jane Doe 100 in order to lead the public to believe there were hundreds of victims, sensationalizing the complaint for the media. On February 2nd, 2023, the Court ordered Ms. McCawley to refer to Jane Doe 100 as Jane Doe 1.

[19] United States District Court of Nevada case 2:21-cv-01412-ART-EJY ECF No. 39.

COMPLAINT AND DEMAND FOR JURY TRIAL

which she states her allegations took place are literally and physically *impossible* including because **Plaintiffs have never met Jane Doe**.

97. Defendants spoke to Jane Doe prior to her filing her complaint including in an email which was between Jane Doe and her "family friend" and attorney, Defendant Robin Melone, whereas; Ms. Melone drafted Jane Doe's complaint with her and Sigrid McCawley to file the complaint within the Nevada litigation[20].

98. Although false, Jane Doe's allegations against Dusty and Taylor Button are categorized as criminal and therefore, it further proves Ms. Melone's malicious intent, acts of concealment, breach of duty and neglect whereas; instead of reporting her allegations, stating that she knew they were false or representing Jane Doe as a criminal defense attorney herself, she referred her to Sigrid McCawley, who is not a criminal defense attorney and only *after* Jane Doe saw the article in the New York Times and the post on social media[21].

99. On December 13th, 2021, Plaintiffs were **again**, met with an amended complaint; "The Second Amended Complaint", whereas two more litigants were added, Plaintiff

---

[20] Deposition of Jane Doe: Q. Were you approached by any attorney involved in this litigation prior to joining it? A. No. I mean I met with Sigrid and Sabina and Lindsey prior to the written complaint actually being submitted. But no one contacted me directly without me contacting them first. Q. How did the family friend that you claim to have contacted in regards to this who then contacted Sigrid, hear of this lawsuit? A. I had told her about one of the articles I had seen, and I believe Sigrid was quoted in it or her name was mentioned in it. Q. So when Sigrid was quoted in this article, that attorney then thought it best for you to reach out to Sigrid?".

[21] Deposition of Jane Doe: "Q. Okay. Did you retain this family friend attorney or was this a favor to you? A. I had her previously on retainer, yes. Q. Previously as in for something entirely separate from all of this? A. My family did, yes. Q. Okay. So your family had — sorry, one more time — your family had this attorney on retainer? A. Yes, she was previously on retainer. Q. By you? A. By my family, yes. Q. So your ▮▮▮▮ is that correct? A. Correct."

COMPLAINT AND DEMAND FOR JURY TRIAL

Taylor Button's ex-girlfriend's best friend, Jane Doe 2[22] and former Plaintiffs, now **Defendant in a separate action[23]**, Juliet Doherty.

100.     On February 24th, 2023, Juliet Doherty voluntarily dismissed her claims against Dusty and Taylor Button, the day after she received her requests for admissions from Plaintiffs.

101.     The allegations brought forth by Juliet Doherty and Jane Doe 2 are false in their entirety *however*, the complaints from the two women prove Jane Doe's fraud further as her false and malicious allegations *are not* supported by either woman's allegations *even if* the allegations in the complaint were true, (they are not).

102.     Plaintiff Dusty Button has never met Jane Doe 2.

103.     Dusty and Taylor Button were not made aware of Jane Doe's true identity until June 14th, 2022 whereas, they spent thousands of hours investigating in an effort to understand who exactly this woman was, as they had **never met her** and had no understanding as to why she had claimed such repulsive and heinous fraudulent allegations against Plaintiffs, **whom she had never met**.

104.     Jane Doe *intentionally, maliciously and knowingly* created a **delusional**, false narrative which she portrayed to hundreds of thousands of third parties including but not limited to business associates of Plaintiffs, employers, sponsors, co-workers and the media, which were entirely and knowingly false and defamatory to gain shock value from the industries which Plaintiffs were well-known and loved in.

---

[22] Sigrid McCawley originally filed Jane Doe 2 as Jane Doe 200 in order to lead the public to believe there were hundreds of victims, sensationalizing the complaint for the media. On February 2nd, 2023, the Court ordered Ms. McCawley to refer to Jane Doe 200 as Jane Doe 2.
[23] Plaintiffs are suing former Plaintiff in Nevada after voluntarily dismissal; Juliet Doherty for malicious prosecution amongst other causes of action in the Southern District Court of New York; case: 1:24-cv-05026-LTS.

COMPLAINT AND DEMAND FOR JURY TRIAL

105.     As admitted by Jane Doe, her ▓▓▓ were *specifically* made aware of her

complaint and her involvement in the Nevada litigation the day, or shortly after the

day she filed the complaint[24] further proving Mr. and Mrs. Hickle aided and abetted

their ▓▓▓ fraud against Plaintiffs.

106.     On or around January 18th, 2022, Sigrid McCawley, (counsel for Jane Doe),

contacted Special Agent Evan Picariello of Homeland Security to investigate Jane

Doe's statement that she filed a police report against Defendants12. Special Agent

Picariello stated no such report was ever filed against Plaintiffs, confirming Jane

Doe's statements to her therapist on Aug. 3rd, 2021 were intentionally fraudulent.

107.     During Jane Doe's deposition, she stated "I've talked to prosecutors on this

case and prosecutors involved in this case already", later stating she spoke with the

Department of Justice – "I believe his first name was Peter. I have also spoken with

someone named Melissa".

108.     In conjunction with Plaintiffs contacting the Department of Justice, they

emailed and filed a police report with the Bedford, NH police department sharing

information they received during Jane Doe's deposition, informing them that she

alleged she was raped by Defendants as a minor and that she stated she told law

---

[24] Deposition of Jane Doe: "Q. So you spent time with us in 2014 without your ▓▓▓ ever knowing, is that correct? A. Correct. Q. And your ▓▓▓ still have no idea you are involved in this lawsuit? A. Incorrect. Q. Did they learn of this following our subpoena for responsive documents from them or from you personally? A. From me personally after I entered the case. Q. When was this that you told them? A. Shortly after I entered the case. Q. In your request for admissions, you stated that your ▓▓▓ did not know you were involved in this lawsuit. That was recently. So can you explain to me how you told them shortly after entering in the year 2021, yet in the year 2023, they were still unaware that you were involved in this lawsuit? A. They were aware. I just don't have a close relationship with them and don't like talking about this with them. Q. You don't have a close relationship with your ▓▓▓ A. No."

enforcement and her therapist, Defendant Katherine Thonis[25], but that it was not reported by her therapist per New Hampshire state law[26].

109.     The Bedford, NH Police Department recognized Defendants' last name and connected it with Special Agent Evan Picariello's investigation prompted by Sigrid McCawley a year prior, confirming for Defendants that there had never been a report filed by Jane Doe as Agent Picariello stated, "*it appears that the Buttons are seeking any information pertaining to the Plaintiffs in an effort to clear their names*".

110.     Plaintiffs also contacted the Boston PD[27], who confirmed no report had been filed and JD1's therapist, Katherine Thonis, who stated she "had no idea what Mr. and Mrs. Button were referring to regarding Jane Doe 1's allegations.

111.     Defendants were all aware of Jane Doe's conspiracy to commit fraud prior to filing her complaint and her continuance in actually committing that fraud which she is continuing today.

112.     Defendants took active steps in aiding and abetting Jane Doe in contribution to her success in defrauding the Court and lying to law enforcement.

113.     Defendants are equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

114.     Allowing Defendants to do so would be **unjust**.

115.     Defendants took active steps to prevent the Buttons from commencing this lawsuit before now, including by withholding imperative documents which were Court

---

[25] Deposition of Jane Doe: Mr. Button: "[…] Did you ever tell your therapist of the trauma you claim you suffered at our hands?" Jane Doe: "When I started to come to terms with it, yes." and; Mr. Button "What was this therapists name?" Jane Doe: "Kathy Thonis" and "I don't know that they reported it, no.", contradicting the forementioned therapy notes on Aug. 3, 2021 stating it was reported.
[26] 19 Section 169-C:3 of the New Hampshire Code states mandated reporters must report an abused.
[27] Plaintiffs only received two police reports from Massachusetts and one from New Hampshire for a drug overdose in 2022, a traffic violation in 2022 and a domestic violence report in 2023.

COMPLAINT AND DEMAND FOR JURY TRIAL

ordered and requested via subpoena, concealing evidence of fraud, aiding and abetting

fraud, failing to perform duties which would have protected and warned Plaintiffs of

the harm intended against them and ultimately resulting in the false allegations,

defamatory remarks and media posts which defamed the good names of Plaintiffs in

their respective industries whereas, if it were not for Defendants' actions and/or lack

thereof, Jane Doe would have been prevented from causing the severe harm to

Plaintiffs, who lost everything due to the false and heinous allegations who have been

in pending litigation with Jane Doe for three years, prevented from seeking recourse

against the Defendants in this litigation until now.

116.        Plaintiffs continue to suffer mental anguish, severe emotional distress,

complete loss of income, damage to their reputations and careers and the inability to

generate any income as a direct and proximate result of Defendants' egregious

conduct including that they are still involved in pending litigation with Jane Doe as of

the date and time of this complaint being filed, July 15th, 2024.

### B. The May 13th, 2021 Defamatory Social Media Attack on Plaintiffs

117.        Preceding the Nevada complaint filed on July 28th, 2021, Plaintiffs endured a

*defamatory social media attack.*

118.        When Plaintiffs asked Mr. and Mrs. Hickles' ▮▮▮▮ how she became aware

of the Nevada litigation, as stated *supra*, her answer was, "*I had got -- I don't recall if*

*I read, I think it was The New York Times article that came out first. I don't remember*

*if I read that article first or a bunch of people that I still follow that are in the dance*

*industry or I danced with growing up had posted something about it on a story or*

*something. I don't recall which I saw first, but that's how I learned about it.*" – Deposition of Jane Doe.

119.     On May 13th, 2017, Plaintiff Dusty Button received an initial attack of two false and defamatory public comments on her Instagram profile page in response to a video she posted of herself dancing from Defendant's personal Instagram account with the username, @mjbreshears[28] which stated the following:

"stop preying on young girls" and "feel like y'all should know she can't keep a ballet job bc she grooms young girls into sex acts with herself and her husband".



---

[28] @mjbreshears is Defendant Madison Jane Breshears' personal Instagram account; Plaintiffs have already filed a Federal lawsuit against Madison Breshears – Case 1:24-cv-03757-MKV

26
COMPLAINT AND DEMAND FOR JURY TRIAL

120.     Plaintiffs did not know of, or recognize the username @mjbreshears as her account was private and Plaintiffs did not know at the time that Ms. Breshears was working "behind the scenes", conspiring with Sage Humphries to defame, harass and destroy Plaintiffs' lives.

121.     Within seconds of Plaintiffs blocking the account @mjbreshers, a separate and anonymous account with the username @Real_World_Ballerina posted the defamatory and despicable posts which led to the downfall and complete destruction of Plaintiffs' careers, businesses, reputations and livelihoods.

122.     The account @Real_World_Ballerina, (which Plaintiffs discovered and confirmed in 2023, was owned and controlled by Madison Breshears), had nearly *twenty thousand* followers.

123.     Nearly *twenty thousand* people had access to everything posted on the account, @Real_World_Ballerina, influencing those *twenty thousand* followers, including Jane Doe, to repost and share the defamatory statements to *hundreds of thousands* of accounts and users on virtually every social media and communication platform, (i.e., Instagram, Facebook, Tik Tok, Snapchat, Reddit, text message, email communication, WhatsApp, and various other platforms).

124.     Within *seconds* of Plaintiffs blocking and reporting, (what Plaintiffs now know to be Madison Breshears' personal account), the following false and defamatory statements were posted by on her anonymous yet, famous account, @Real_World_Ballerina:

**POST ONE**

"PSA: DUSTY BUTTON IS A PREDATOR"

1



2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20     125.     The "posts" and "stories" Jane Doe referred to in her deposition, seen *supra*, is

21     the post shown above and the following Instagram stories seen below.

22 <div align="center">**POST TWO**</div>

23     "This keeps getting removed. And she blocked me. But if you follow Dusty Button, you

24

should know she can't keep a ballet job because she grooms young girls to engage in sex acts

25

26 <div align="center">with herself and her husband".</div>

27

28

<div align="center">28
COMPLAINT AND DEMAND FOR JURY TRIAL</div>



**POST THREE**

"[toxic emoji], if u or someone u know has been victimized by dusty_button, u aren't alone. She can't keep a ballet job because she grooms young dancers for sex acts with herself and her husband. This will probably get removed, she has managed to block and remove my other posts, but I hope at least someone can see this [toxic emoji]".

**real_world_ballerina** 🌸🌸🌸 if u or someone u know has been victimized by dusty_button, u aren't alone. She can't keep a ballet job because she grooms young dancers for sex acts with herself and her husband. This will probably get removed, she has managed to block and remove my other posts, but I hope at least someone can see this. 🌸🌸🌸

### POST FOUR

"I have friends who have personally been victimized, or known someone victimized by

@dusty_button. Don't give her a platform".



126.     The defamatory and disgusting statements posted above are just a *fraction* of

the harassment and defamation Plaintiffs endured for years.

127.     The following statements are just a few examples and a fraction of what

Plaintiffs endured as a direct result of Jane Doe's fraudulent allegations, which

instantly spread like wildfire resulting in defamatory articles in innumerable media publications and news outlets including but not limited to those posted below:

- "@schonraker_foto him and the missus have been too busy BF'n[29] little girls to make social media posts it would appear" – Instagram user @the_mechanicalanimal.



- "#dustybutton You child rap1st[30] P#S[31]. You need to be thrown in a wood chipper." – Instagram User - @dunerooster

- "▇▇▇ rapist POS[32]. You need to be thrown in a wood chipper." – Instagram User - @dunerooster



---

[29] *BF'n – abbreviation for "butt fucking" but which means "sodomizing"; in this case, a female child.
[30] Rap1st = rapist.
[31] P#S = Piece of shit.
[32] POS = piece of shit.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

128.     As another example, (as depicted by the screenshot below), following the initial post, numerous hate pages and accounts were created to bully, harass and threaten Plaintiffs as a direct result of Jane Doe's false and defamatory allegations in the Nevada litigation and Defendants' conduct who intentionally aided that fraud, ultimately allowing Jane Doe to harm Plaintiffs Dusty and Taylor Button.

- Username – @dusty_button_hatepage



129.     This is just a mere *fraction* of the communications, notifications, threats and
harassment which Plaintiffs received following Jane Doe's frivolous complaint, all of
which Plaintiffs have documented and preserved for discovery.

130.     Jane Doe, her ████ her social worker and her attorney *knew* her false and
defamatory narrative provided a questionable foundation for the complaint filed but
that it would **sensationalize** and amplify any headline to follow thus fortifying that
frivolous foundation.

131.     For example, the headlines below are just a hint of what Plaintiffs endured as a
direct cause of Jane Doe's fraudulent allegations and Defendants' cover up of Jane
Doe's fraud.



Home | Showbiz | Femail | Royals | Sports | Health | Science | Politics | Money | U.K. | Video
Breaking News | Australia | Video | University Guide | China | Debate | Meghan Markle | Prince Harry | King Ch...

## Boston Ballet's former star dancer is hit by THREE new sex attack claims: Lawsuit says ballerina pointed gun at underage girl while her husband raped her in weapon-filled room

- An expanded lawsuit was filed late last week adding three more alleged victims to the lawsuit which names Dusty Button and her husband Mitchell Taylor Button
- Among the new accusers is Jane Doe 100 who claims she was raped by Mitchell
- Dusty, Boston Ballet's former principal dancer, allegedly befriended the underage girl in 2014 and introducing her to former principal dancer Mitchell
- The couple then allegedly plied the girl with booze and took her back to their home where Mitchell allegedly raped her inside a gun-lined room
- Dusty was holding a gun and appeared to film the encounter, while the 'terrified' girl cried and begged for the abuse to stop, the suit claims
- This marks the fifth alleged victim to come forward to accuse the couple of using their position of power in the dance world to abuse young female dancers
- The suit originally filed July 28 was brought by two professional dancers, Sage Humphries and Gina Menichino

COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10



11
12
13
14



15
16
17
18
19
20
21
22
23
24
25
26
27
28





View all 237 comments

September 30, 2021



Liked by nk_frl and **others**

**formuladerp** If you're in car culture in general, you might be familiar with the #buttonbuilt ferraris - they infamously made waves at SEMA with both the 328 GTS, and a 355TT. Some of us in the drift world are familiar with him, his work, and his ballerina wife, Dusty. A shocking series of events has led to where we are now:

Dancers have come forward as part of an expanded lawsuit against a former star dancer with the @bostonballet and her husband, alleging the couple raped her while she was still a minor.

The dancer, who is identified in court filings only as Jane Doe 100, is one of five female dancers who say Mitchell Taylor Button and his wife, former Boston Ballet principal dancer dusty_button, "exploited their position of power and influence in the dance world to sexually abuse young dancers across the country."

The original suit, brought by Boston Ballet's @sagenicolehumphries and another dancer, @ginamenichino, named only Mitchell Button, who has several aliases but often goes by Taylor, as a defendant. The expanded lawsuit, filed late last week in US District Court in Nevada, adds three new plaintiffs and expressly names Dusty Button as a defendant.

"What you have here is the highest level of betrayal," said Sigrid McCawley, an attorney representing the plaintiffs. "You see the use of a famous female ballerina to coax these victims into a situation where they become prey for this serial abuser."

If anyone in the SEMA or Formula Drift communities that see this post and has been a victim of these people, please reach out to law enforcement. ••• #buttonbuilt #SEMA #formuladrift

View all 237 comments

September 30, 2021

34
COMPLAINT AND DEMAND FOR JURY TRIAL





132.     These posts are just a fraction of what Plaintiffs endured as a direct cause of Jane Doe's fraudulent complaint against Plaintiffs and Defendants' conduct, allowing and assisting Jane Doe to commit such fraud.

### C. Jane Doe's Deposition on June 29th, 2023

133.     On June 29th, 2023, Plaintiffs deposed Jane Doe via Zoom for nearly four and a half hours whereas, Mr. and Mrs. Hickles' ███████ admitted that she was suspended from Marymount Manhattan college for plagiarism and that it was the second instance of plagiarism, noted in her therapy records and seen, *supra*.

134.     Defendants had actual knowledge of Jane Doe's habitual and compulsive tendencies to plagiarize and to additionally lie about that behavior to cover it up.

135.     Plaintiffs verified this compulsive, delusional and mentally unstable behavior in her deposition.

136.     Jane Doe went to many performances at the Boston Ballet to watch Plaintiff Dusty Button including after she alleged the assault took place in December of 2014 when Dusty was performing the leading role in the Nutcracker and additionally, followed Plaintiffs on their social media accounts, (1 of approximately 500,000 who did), was obsessed with both Plaintiffs, their lives and careers, stalking their personal lives prior to filing her fraudulent and malicious complaint.

137.     Throughout the course of her deposition, Jane Doe stated, "I don't recall", nearly *three hundred times* and refused to name a time, date, day, week, month, year, season or location where or when she claims her allegations took place in 2014.

138.     Defendants Patrick and Elizabeth Hickle knew that her allegations were fraudulent including because during the entire year of 2014, they were her only mode

of transportation to and from Boston, MA from New Hampshire, as admitted by their ███████.

139.      Unbeknownst to Plaintiffs, there was a large conspiracy taking place against them as Jane Doe revealed that every Defendant in this instant complaint aiding her in committing fraud, from drafting the complaint and putting her in contact with Sigrid McCawley and associates from Boies Schiller Flexner to assisting her continuance in frauding the Court, law enforcement and Plaintiffs; as Defendants failed in their duties to protect and warn while knowing Jane Doe's allegations were fraudulent and frivolous in their entirety.

### i. Patrick and Elizabeth Hickle's Involvement in Their ██████ Fraud Committed Against Plaintiffs

140.      On April 8th, 2023 Patrick and Elizabeth Hickle were subpoenaed for documents regarding their ██████ Jane Doe; within that subpoena for documents was a request for her therapy records which were intentionally requested *prior* to her deposition on June 29th, 2023, but never provided as requested as Patrick and Elizabeth Hickle only provided selective documents which *did not include* their ██████ therapy records as requested within the subpoena to conceal her fraud.

141.      Patrick and Elizabeth Hickle *intentionally withheld* imperative therapy records to prevent Plaintiffs from inquiring about their ██████ mental health knowing she

---

[33] Deposition of Jane Doe – "Q. So going back on the other statement that your ████ drove you for the entire year 2014, are we safe to assume that now you are stating you could have driven yourself some of these times? A. I didn't drive myself to Boston until I was in college." ;

"A. I don't remember when exactly I got my license, but it wasn't until I was in college when I started driving myself to Boston. Q. And that was in 2015 when you moved to New York City to go to Marymount, is that correct? A. Correct".

COMPLAINT AND DEMAND FOR JURY TRIAL

was a harm to herself and others including her salacious and fraudulent allegations against Plaintiffs.

142.       Patrick and Elizabeth Hickle have previously kept their ▮▮▮▮ history of mental health hidden from third-parties to prevent those third-parties from having knowledge that their ▮▮ could cause harm to others.

143.       In addition to the forementioned statement, there are multiple instances where Patrick and Elizabeth Hickle have neglected to inform third-parties about their ▮▮▮▮▮ mental health to prevent her from harming others over *years* of mental health issues which were not properly treated when Jane Doe was a ▮▮ ultimately leading to a culmination of her delusion which resulted in her committing fraud and severely harming Plaintiffs by making false, defamatory and repulsive allegations which did not and could not possibly have taken place including because Plaintiffs have never met Patrick and Elizabeth Hickle's ▮▮▮ Jane Doe.

144.       Patrick and Elizabeth Hickle reside at ▮▮▮▮▮ Rd. New Hampshire and were residence of this address in 2014 where their ▮▮ Jane Doe was also a resident at their home prior to and during the entire year of 2014.

145.       As previously stated, on every occasion where Jane Doe traveled to Boston in the year of 2014, Patrick and Elizabeth Hickle drove her to and from Boston whereas, Jane Doe did not have her license and did not drive herself into or out of Boston until the year 2015, after she started attending college in August of 2015.

146.       As stated, *supra*, Jane Doe alleges in her complaint that in the year of 2014 she went to a party in Boston, MA with Plaintiffs where she alleges she was drugged

and then went to Plaintiffs' home where she alleges she was raped at gunpoint by Plaintiffs, (**who she has never met**).

147.     Jane Doe then stated in her deposition that the following morning, she woke up in her own bed at her ▮▮▮▮ home at ▮▮▮▮▮▮ Rd in New Hampshire[34].

148.     Jane Doe stated she "does not recall" what she did before she alleges she went to a party with Plaintiffs, how she got to the party, how she left the party, how she got to Plaintiffs' home, what happened prior to the rape at gunpoint, what happened after the rape at gunpoint, or how she got to her ▮▮▮▮ home to wake up in her bed at their house the following morning; she alleges that she *only remembers* that Plaintiff Dusty Button made her a drink at the party, that the assault occurred and that she woke up in her ▮▮▮ home the next morning.

149.     Jane Doe's deposition proved the following:

    1)  The building which Jane Doe alleges her assault occurred **did not even exist** in 2014.

    2)  Further, Plaintiffs did not live in the building until February of 2015 as construction was incomplete, delaying their move in date.

    3)  Plaintiffs did not own firearms.

    4)   Jane Doe never once drove herself to Boston, MA in the year of 2014, confirming her ▮▮▮▮ dropped her off and picked her up every single time she visited Boston, MA from New Hampshire.

---

[34] Deposition of Jane Doe – "A. The next thing I remember after the rape, assault was being home. I don't remember how I got there or time. Q. Home with your ▮▮▮▮ A. I remember being in my bedroom, I was alone. Q. At your ▮▮▮▮ house, is that correct? A. Correct."

COMPLAINT AND DEMAND FOR JURY TRIAL

5) Mr. and Mrs. Hickle knew their ███████ never went to a party in Boston, MA with Plaintiffs or had any relation to Plaintiffs.

6) Mr. and Mrs. Hickle knew their ███████ never met Plaintiffs.

7) Mr. and Mrs. Hickle knew that none of the allegations stated within their ███████ complaint in Nevada were even remotely possible.

150.     Patrick and Elizabeth Hickle were told by their ███████ that she filed a complaint against Plaintiffs shortly after she filed it, on September 23rd, 2021.

151.     Defendants had *actual knowledge* that her allegations were fraudulent in their entirety and did nothing to prevent the harm she caused upon Plaintiffs.

152.     Defendants had actual knowledge that their ███████ had never met Plaintiffs, that she never spent time with them and that she was never assaulted by Plaintiffs.

153.     Jane Doe stated that upon telling her ███████ of the allegations that her ███████ were not very emotional people but "gave her a hug"; stating her ███████ did not call the police to report the incident or take any further action to help her but instead, did not address the allegations with her.

154.     Patrick and Elizabeth Hickle *knew* that their ███████ made false statements to the Department of Justice.

155.     Plaintiffs were the *only* party to get a report from the Bedford, NH Police Department, which was ironically, the email from Plaintiffs to the Bedford, NH Police Department and the report filed by Plaintiffs in an effort to discover more information about the allegations stated by Jane Doe, (the report is seen below):

**BEDFORD POLICE DEPARTMENT**
**INCIDENT REPORT**

| 1. CAD Event Number | 2. ORI NO | 3. Phone Number | 4. Other Agency Case # | | 5. Department Case Number |
|---|---|---|---|---|---|
| 23-019730 | NH0060600 | 603-472-5113 | | | 2023-018418 |

**CRIME / INCIDENT INFORMATION**

| 7. Incident Date | 8. Incident Time | 9. Loc. of Crime or Incident (No. - Street) | 10. City | 11. County | 12. State | 13. Zip | 14. Location Zone |
|---|---|---|---|---|---|---|---|
| 07/24/2023 | 1014 Hrs | | BEDFORD | HILLSBOROUG H | NH | 03110 | S1 |

| 15. No. | 16. RSA | 17. Crime Incident | 18. Degree |
|---|---|---|---|
| 1 | | ASSIST OTHER AGENCY | |

**PERSON(S) INVOLVED**

| # | 23 Type | 21. Name (Last) | (First) | (Middle) | Home Phone / Cellular |
|---|---|---|---|---|---|
| 1 | CONTACT | | | | |

| 22. Full Address (No. and Apt/Suite) | 23. City | 24. County | 25. State | 26. Zip |
|---|---|---|---|---|
| | BEDFORD | HILLSBOROUGH | NH | 03110 |

27. Mailing Address ( if different than above)

| 28. Social Security No. | 29. DOB | 30. Age | 31. Sex | Race | Driver's License # / State |
|---|---|---|---|---|---|
| | | 26 | FEMALE | WHITE | / NH |

**VEHICLE(S) INVOLVED**

| 31. State | 32. XX. Reg. Number | 33. XX. Lic. Type (LY) | 34. Year | 35. Model | 36. Body Type | 37. Color | Vehicle Identification Number |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**NARRATIVE / GIST**

On July 24, 2023, dispatch advised that they were in receipt of an email from the Manchester Police Department referencing ▮▮▮▮▮▮▮

The email was written by a Dusty and Taylor Button (unknown DOB), stated that they had deposed:

▮▮▮▮▮▮▮
▮
Bedford, NH

for a federal civil case ▮▮▮ stated under oath that she had informed ▮▮▮▮▮ who is identified in the email as Katherine Thonis ▮▮▮

▮▮▮▮▮ The email stated that as this was stated under oath it would still require an investigation.

Thonis is currently employed at:

Mill Creek Counseling
250 Commercial Street Ste#2011
Manchester, NH
603-801-2732
603-801-5597

I request that this case be handed over to the Bedford Police Department Detective Division for further investigation.

FTO Kennedy

| Print Name / Tech | Page No | Report Date | Reviewed By |
|---|---|---|---|
| OFF. STEPHEN KENNEDY JR, IBIC18 | | | SGT. DANIELLE NIGHTINGALE, IB#24 |
| *Stephen Kennedy* (Signature) | 1 OF 2 | 07-24-2023 | (Supervisor Signature) |

**BEDFORD POLICE DEPARTMENT**

**CONTINUATION PAGE REPORT**

**Report Narrative:**

On Monday, July 24, 2023, at approximately 0930 hours, I was forwarded and email from the following individual:

Amana Adroc
Communications Supervisor
Manchester Police Department
The MichAEl Briggs Safety Complex
405 Valley Street
Manchester, NH 03103

labeled to, *Police Report for* [redacted] from the following individuals,

Paige and Taylor Burton
Boston, Massachusetts
[redacted]

The Burtons reported that an individual who they identified as

[redacted]

Bedford, NH 03110

and or of

[redacted]

Boston, MA

who they deposed as part of an ongoing federal civil case disclosed to her the report.

Katherine Thorn
Clinical Social Worker
Milli Creek Counseling
250 Commercial Street

that [redacted] The Burtons also reported that Hickiz was a minor at the time of her disclosure [redacted]

The Burtons alleged that [redacted] would have provided false testimony under oath but noted that they felt an obligation to report the allegation as it would warrant an investigation.

The Burtons stated that [redacted] reported to have been residing at the Bedford, NH address at the time of [redacted] and did not indicate in any way that it occurred at that location. It appeared to me that they were requesting an investigation be conducted by the Manchester Police Department regarding Thorn. [redacted]

COMPLAINT AND DEMAND FOR JURY TRIAL

42

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

| CAD Event Number 23-019730 | ORI NO NH00600600 | Phone Number 603-472-5113 | Other Agency Case # | Department Case Number 2023-018418 |
|---|---|---|---|---|

if what Hickle testified under oath was true.

While reviewing the email it occurred to me that the Button surname was something that I had previously researched at the request of the following,

Evan Picariello
Special Agent
Homeland Security Investigations (HSI)
Boston, MA

On Tuesday, January 18, 2022, at approximately 1553 hours, I corresponded with Special Agent Picariello who ex lained that he was assi ned to the                     and investi atin several re orts

Dusty Rachelle Button

Mitchell Taylor Moore; aka Mitchell Taylor Button; aka Taylor Button (

I conducted a search through the Bedford Police Department's Record Management System with negative results. I provided that information to Special Agent Picariello and that ended our contact.

Fast-forward to the present complaint, I recognized the connection and contacted Special Agent Picariello. He confirmed that the email I received was the result of the investigation he was involved in when he previously reached out to me.
                                                                         He stated that although the criminal investigation did not result in charges, there is an ongoing civil litigation, and it appears that the Buttons are seeking any information pertaining to the plaintiffs in an effort to clear their names.

No crime occurred in Bedford.

**Follow-up:**
None

| Print Rank / Name DETECTIVE AMY CHAMPAGNE, ID#02 | Page No 2 Of 2 | Report Date 08/08/2023 | Reviewed By DS KEVIN SUTTER, ID#D1 |
|---|---|---|---|
| Si nature | | | Su ervisor Si nature |

156.     Plaintiffs were eventually provided therapy records from Jane Doe's counsel

following her deposition whereas it was proven and shown that prior to 2021,

including in the year 2014, Jane Doe told each and every therapist she saw that she

had *never been sexually assaulted* or assaulted at all.

23

24

25

26

27

28

43
COMPLAINT AND DEMAND FOR JURY TRIAL

157.     These therapy records proved further that her allegations were false and that her ███ were negligent in providing their duties to her and to Plaintiffs as private third-parties who were *severely harmed*, stalked and harassed by their ███ proving the lack of help provided to her resulted in such harm as they ignored clear signs of delusion displayed by their ███ such as:

    1)   Jane Doe never reported a sexual assault to the police as Plaintiffs contacted any and all law enforcement searching for this report but only received a report which they filed themselves and against Ms. Thonis for not reporting a sexual assault which Jane Doe alleged took place to Ms. Thonis.

    2)   Plaintiffs were *never charged* with any crime, much less a crime alleged by Jane Doe, as they never committed any crime and as stated, *supra*, **have never met or heard of Jane Doe**.

    3)   Jane Doe was fifteen in the year 2012 further proving her allegations to be false as she alleged Plaintiffs assaulted her in 2014 when she would have been seventeen.

158.     During the deposition of Patrick and Elizabeth Hickle's ███ she stated she was admitted once again into psychiatric care in 2019 for a brain hemorrhage caused by medication given to her by a doctor at Pathways Hospital where her ███ worked following her being admitted by her ███ at that hospital due to bullying and depression, whereas, Jane Doe stated to her ███ that she was having panic attacks, cutting herself and "just very depressed" due to a bad break up with her boyfriend, stating she told her ███ "I wanted to die".

159.     Jane Doe later stated that she lied to her ████ about the reason for the panic

attacks, cutting and depression and stated that she later told them it was due to the

traumatic events which occurred in 2014 when she alleges Plaintiffs sexually assaulted

her and that she had not come to terms with it prior to telling them in 2021 but that she

has now come to terms with it and that they were aware that the reason behind the

trauma was due to her sexual assault but that they made no attempt in reporting it;

making Patrick and Elizabeth Hickle liable for their ████ mental health crisis,

intention to commit fraud and delusion in filing the fraudulent litigation against

Plaintiffs.

160.     Defendants Patrick and Elizabeth Hickle knew their ████ was mentally

unwell and made no attempt to prevent her from committing fraudulent acts against

Plaintiffs, including that they had actual knowledge that none of her allegations of

sexual assault took place.

### D. Katherine Thonis' Involvement in Her Clients' Fraud

161.     Defendant Katherine Thonis has been a social worker for Patrick and

Elizabeth Hickle's ████ for years, including when their ████ was admitted for

psychological evaluation and stay at the Pathways Hospital on a number of occasions.

162.     Upon Patrick and Elizabeth Hickle's ████ being deposed on June 29th,

2023, Plaintiffs learned that Ms. Thonis was one of the first told of the alleged sexual

assault claimed in Jane Doe's complaint.

163.     Following Jane Doe's deposition, Plaintiffs proceeded to contact Ms. Thonis

to inquire about the allegations made by Jane Doe, that she told Ms. Thonis of the

allegations against Plaintiffs; whereas, Ms. Thonis directly stated to Plaintiffs, (on a

legally recorded phone call), "That was a long time ago"; "I have no idea what you're talking about" and "I really have no idea what you're talking about".

164.     Plaintiffs informed Ms. Thonis that it is New Hampshire law and the duty of a social worker to report the sexual assault of a minor to law enforcement and that if she had not, they would report it to law enforcement, which they did, as seen *supra*.

165.     The recorded phone call was submitted to the Nevada District Court within the litigation.

166.     Following Plaintiffs' phone call with Defendant Thonis, Plaintiffs contacted the Bedford, NH police department, reporting that they deposed Jane Doe and had contacted Katherine Thonis following the deposition to clarify the statements made by Jane Doe and that a crime had not been reported per New Hampshire state law however, Plaintiffs also stated to law enforcement that they had never met Jane Doe and were inquiring if there were any past reports or any reports at all involving the allegations made by Jane Doe or her social worker Katherine Thonis.

167.     Following Plaintiffs' communication with Bedford, NH Police Department, Plaintiffs received only one report from the department and it was the report Plaintiffs filed in order to investigate the claims Jane Doe stated in her deposition, as seen *supra*.

168.     Following Plaintiffs' communication with Bedford NH Chief, John Bryfonski, the claims regarding Ms. Thonis' failure to report were investigated resulting in "No crime committed" in Bedford, NH, confirming Ms. Thonis either lied to law enforcement and stated that either 1) Jane Doe did not tell her of the assault as she said she did during her deposition or 2) Jane Doe did tell her of the assault but Ms. Thonis

concealed her clients' fraud and to further assist her in committing that fraud against Plaintiffs.

169.      Katherine Thonis did not report the assault to law enforcement or to Jane Doe's ▮▮▮▮ failing to perform her duties as a social worker by neglecting to report her clients' claims of sexual assault as a minor, further allowing Patrick and Elizabeth Hickle's ▮▮▮▮ to harm herself and others including Plaintiffs.

170.      If Ms. Thonis did not fail in her duties to report Jane Doe's assault to her ▮▮▮▮ and to law enforcement, she failed in her duties to protect and warn Plaintiffs as they specifically contacted her and gave her an opportunity to state that she had *actual knowledge* of her client's fraudulent allegations.

171.      As a direct and proximate result of Defendants' conduct, Plaintiffs were severely harmed.

### E.  Robin Melone's Involvement in Her Clients' Fraud

172.      As stated, *supra*, Plaintiffs deposed Patrick and Elizabeth Hickle's ▮▮▮▮ on June 29th, 2023.

173.      Jane Doe stated in her deposition:

- Jane Doe: "[I]Believe I saw an article that came out about it, it was either the article or a social media post. And at the time I already started working through the trauma and coming to terms with what had happened in therapy and on my own. And I had reached out to a lawyer that was a family friend and they were able to put me in touch with Sigrid, Lindsey and Sabina."

- Plaintiff Taylor Button: "What was your lawyer's name?"

- Jane Doe: "Robin Melone".

174. It was later stated that Robin Melone was a family attorney hired by Jane Doe's [redacted] for an entirely separate matter but that she told Defendant Melone of the sexual assault and that Ms. Melone put her in touch with her attorneys from Boies Schiller Flexner to file her complaint.

175. Plaintiffs specifically asked for discovery to be extended in order to subpoena Robin Melone.

176. Plaintiffs subpoenaed Ms. Melone as part of discovery in Nevada whereas Ms. Melone initially cooperated and communicated with Plaintiffs stating she was working to retrieve the file, (as seen below):

RM **Robin Melone** Inbox - DUSTY BUTTON September 21, 2023 11:48 AM
RE: Subpoena service - Humphries et. al Button Case 2:21-cv-01412-ART-EJY
To: Dusty Button

Ms. Button,

Thank you for your message. I appreciate your flexibility, but a date before the 25th is not helpful. Our office is working to retrieve the file from storage and we will do our best to comply with the September 29 deadline by producing documents or filing a pleading.

Be well,
Robin

**From:** Dusty Button <worldofdusty@gmail.com>
**Sent:** Tuesday, September 19, 2023 3:12 PM
**To:** Robin Melone[redacted]
**Subject:** Subpoena service - Humphries et. al Button Case 2:21-cv-01412-ART-EJY

Good afternoon Ms. Melone,

Your email was forwarded to me from Robinson Detective Agency regarding the subpoena which was served on you and pertaining to the Federal Civil litigation in Nevada. Thank you for your quick reply. From your email, we understand you have trial on the dates requested for production but unfortunately, because discovery in this litigation has already been extended multiple times with a final date extended to September 29th, 2023 (specifically for the final issued subpoenas, which includes your production) to allow the final production to come in, we are not able to extend any more deadlines pertaining to discovery or the production as the Court will not allow for further extensions and that is the final cut-off date for discovery.

If you are unable to meet at the time and place on September 29th, we can accommodate a date prior to the 25th (as I understand that is your trial start date), or another time that would accommodate your schedule and we would coordinate that time with **ROBINSON DETECTIVE AGENCY.**

Please let me know a date that would be convenient for you and if you have any other questions, or would prefer a call regarding this matter, you can reach me at [redacted]
Thank you again for your quick response,

Dusty and Taylor Button
*(Pro se)*

177.     Following this initial response from Robin Melone, Jane Doe's attorneys at Boies Schiller Flexner conferred to inform Mr. and Mrs. Button that they would be filing a Motion to Quash Robin Melone's subpoena.

178.     Shockingly, Robin Melone suddenly had a change of heart whereas, her next communication with Plaintiffs was that the subpoena did not address attorney client privilege and therefore, a Motion to Quash was appropriate.

179.     Plaintiffs never received any documents or information from Robin Melone as her subpoena for production responsive to Jane Doe was quashed in the Nevada District Court.

180.     Defendant Robin Melone knew that her clients' allegations were fraudulent, knew that Plaintiffs had never met her client and yet, intentionally made the decision not to fulfill her duties in protecting and warning Plaintiffs that her clients' intentions were malicious and instead, aided her client by concealing her fraud against Plaintiffs.

181.     Plaintiffs attempted to contact Ms. Melone on a number of occasions following her communications and obligation to produce documents including after her affidavit was provided to Boies Schiller Flexer but were unsuccessful as Defendant Melone never returned communication after September 27th, 2023.

182.     Ms. Melone, as a criminal defense attorney, failed in her duties to her client by encouraging her client to harm others and to file a fraudulent and vexatious lawsuit against Plaintiffs; instead of fulfilling her duties to her client and others by protecting and warning, Ms. Melone condoned her clients' acts of delusion and referred her to counsel after her client told her of the sexual assault allegations.

183.     Ms. Melone was willing to comply with Court orders prior to speaking to Jane

Doe's attorneys at Boies Schiller Flexner and to provide the requested documents

within her subpoena however, Ms. Melone made the decision to withhold documents,

aiding her client in fraud by assisting her in concealing her fraud.

184.     In fact, Jane Doe's counsel in Nevada produced a document showing an email

from Robin Melone to Nevada counsel on the day Jane Doe's complaint was filed, at

12:44pm, just hours before Jane Doe's complaint was filed, proving that Defendant

Melone knowingly assisted Jane Doe in filing a fraudulent and malicious complaint

while having actual knowledge that her client's allegations were false.

185.     The harassment, defamation and death threats received due to Jane Doe's

fraudulent allegations were a direct and proximate result of Robin Melone aiding and

abetting her client commit fraud upon the Court while breaching her duties to protect

and warn of her client's intent to commit fraud and harm upon Plaintiffs.

### F. Defendants' Involvement in Aiding and Abetting Jane Doe

186.     Each Defendant set forth herein failed in their duty, which they each owed to

Plaintiffs to protect and warn following their knowledge of Jane Doe's fraudulent

claims of sexual assault.

187.     Each Defendant set forth herein showed clear neglect upon discovery of Jane

Doe's false allegations of sexual assault against Plaintiffs whereas, they failed to

report or otherwise disclose pertinent information regarding Jane Doe, which they had

*actual knowledge* of, to prevent her from harming herself or others and instead,

allowed her and in certain instances aided her in committing that fraud.

188.     Each Defendant set forth herein aided and abetted Jane Doe by *intentionally* withholding documents and/or information regarding Jane Doe which would have otherwise prevented severe harm from coming upon Plaintiffs.

189.     Each Defendant set forth herein aided and abetted Jane Doe by intentionally withholding information that otherwise aided and abetted in the commission of a crime and/or the preparation of a false statement.

190.     Mr. and Mrs. Hickle *knew* that their ▮▮▮▮ had committed or was planning to commit a crime, but failed to report it.

191.     Ms. Thonis knew that her client had committed a crime but failed to report it.

192.     Ms. Melone knew that her client had committed a crime but failed to report it.

193.     Upon discovery of Jane Doe's false and fraudulent allegations, each Defendant had an obligation to report her acts of fraud including because each Defendant knew Jane Doe was preparing a false statement but failed to report, protect or warn of her false statements whereas, each Defendant conspired with the other in order to conceal the fraudulent actions of Jane Doe which they reasonably knew or discovered to be false.

### G.  The Aftermath of Defendants' Negligence

194.     Plaintiffs will **never mentally, spiritually, physically or financially recover** from the consequences of Defendants' negligence which resulted in defamatory, malicious and egregious false allegations and statements made to the Court, the public, the media, the press, employers, sponsors and innumerable third-parties about Plaintiffs.

195.    Defendants Patrick and Elizabeth Hickle *knew* or should have known the fraud

committed, resulting in defamatory statements and false allegations stated by their

████ would inflict *severe harm* and trauma upon Plaintiffs whereas, there would

be no recovery from the false, fraudulent and defamatory statements made about

Plaintiffs to a mass audience.

196.    Defendants Katherine Thonis and Robin Melone *knew* or should have known

the fraud committed, resulting in defamatory statements and false allegations stated by

their client would inflict *severe harm* and trauma upon Plaintiffs whereas, there would

be no recovery from the false, fraudulent and defamatory statements made about

Plaintiffs to a mass audience.

197.    Defendants were negligent in protecting and warning Plaintiffs after discovery

of Jane Doe's false allegations against them and knew that Jane Doe was committing

fraud with the intent of perjury and inflicted harm upon Plaintiffs but failed to disclose

that those allegations were false even after discovery of those false allegations.

198.    Jane Doe told Defendants Patrick and Elizabeth Hickle that she intended filed

a malicious lawsuit against Plaintiffs whereas, she told them of the allegations and the

Defendants knew her allegations to be untrue and impossible but intentionally

concealed her fraud and were negligent in their duty to care for their ████ mental

health and to protect and warn Plaintiffs or law enforcement of the fraud being

committed.

199.    Jane Doe told Defendants Robin Melone and Katherine Thonis of her

allegations and that she intended filed a malicious lawsuit against Plaintiffs whereas,

Ms. Melone assisted her in filing that malicious and frivolous lawsuit; whereas, Ms.

Thonis stated she had "no idea" of the allegations and continued to assist Jane Doe is concealing her fraud by not disclosing the false allegations to law enforcement upon investigation.

200.    Jane Doe told Defendants of the allegations, Defendants knew her allegations to be untrue and impossible but intentionally concealed her fraud and were negligent in their duty to care for their client's mental health and to protect and warn Plaintiffs or law enforcement of the fraud being committed.

201.    The aftermath of Defendants' negligence and conspiracy to conceal fraud by aiding and abetting Jane Doe was *catastrophic* including by preventing Plaintiffs from being able to properly defend themselves in the media and in their own litigation in Nevada as they did not even know who Jane Doe was as they had never met, seen or heard of Jane Doe in their entire lives until she fraudulently came forward with her false and malicious allegations.

202.    Defendants' negligence and conspiracy to conceal fraud, allowing their ███████ and their client to harm Plaintiffs resulted in the loss of millions of dollars in revenue, assets and income, as Plaintiffs' businesses, good names and network of professional relationships were all completely destroyed due to the nature of the heinous allegations stated by Jane Doe.

203.    As seen, *supra*, Plaintiffs themselves, *were* their business, contracted by numerous private contractors which immediately ceased working with Plaintiffs following the defamatory global media campaign waged against them, including but not limited to contractors and sponsors who had employed and worked with Plaintiffs for *over fifteen years*, and who immediately disassociated themselves from Plaintiffs.

204.     Plaintiffs were sent death threats, threats of physical violence if they were to be seen in public and harassing messages, as hundreds of thousands of accounts reposted the defamatory and slanderous statements which were intentionally harmful to Plaintiffs and stated by Jane Doe, which should have been prevented by Patrick and Elizabeth Hickle, Katherine Thonis and Robin Melone.

205.     Plaintiffs were physically, forcibly and embarrassingly removed from public events and various restaurants and stores where their names and likenesses were recognized from the media that Defendants orchestrated.

206.     As a direct and proximate result of Defendants' conduct, Plaintiffs no longer work in their respective industries and have been completely unemployed since 2021 as Defendants destroyed any and all ability to work in the industries Plaintiffs worked their entire lives to be proficient in.

### H. Defendants' Destruction of Plaintiffs' Business, Goods and Services

207.     As stated in the above references, Plaintiffs' names and likeness was their *only business,* which generated the entirety of their revenue, income and business, whereas Plaintiffs, themselves, and what they provided to their respective industries was solely based on what they provided as their name brands known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand and Bravado by Dusty Button.

208.     Plaintiffs' established business, goods and services were directly sourced and provided from their good names, talent, expertise and reputations, which were completely destroyed by Defendants' negligence in concealing the fraud of Jane Doe

and failure to protect and warn, resulting in the defamatory remarks and false allegations made by Jane Doe.

209.    As stated in the above referenced facts, Plaintiffs were highly respected, extremely well-known, leaders of the dance industry and the automotive industry, and reliant on their businesses which were well established for over fifteen years, as each Plaintiff was their own business in which they were hired based on their desired skill sets in their industries, which others could not offer.

210.    Plaintiffs had established business with signed negotiated contracts with three companies to manufacture and sell their dancewear line which was in its initial phase and well under way as Plaintiffs were beginning the second wave of these partnerships when Defendants' negligence and concealment of fraud resulted in Jane Doe's ability to commit acts of fraud against Plaintiffs resulting in false and frivolous statements which derailed all operations.

211.    Plaintiffs lost any and all business immediately and for the foreseeable future as a direct result of Defendants' negligence in their duties and concealment of fraud by aiding and abetting the false allegations of Jane Doe resulting in a frivolous litigation and defamatory statements about Plaintiffs, resulting in injurious falsehood.

212.    Defendants *knew* that by aiding and abetting Jane Doe, concealing her fraud and failing to provide their duties to Jane Doe and to Plaintiffs by neglecting to protect and warn of the status of Jane Doe's mental health upon discovery of her false and frivolous allegations that Plaintiffs would suffer *significant* and *irreparable* financial harm.

213.     Defendants *knew* the nature of the false allegations and statements made by Jane Doe were false as she *intentionally* crippled Plaintiffs' business and ability to generate revenue and income as a direct result of Defendants' negligence in their duties to disclose, protect and warn including after discovering that Jane Doe made false and frivolous allegations about Plaintiffs.

214.     Defendants *knew* Jane Doe's statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Dusty Buttons' teaching, provided choreography, modeling, dancing, guest performing, speaking engagements, design concepts, marketing and brand ambassadorship, all of which were destroyed as Plaintiff Dusty Button was her own goods and services, as her name and career was her brand and her business.

215.     Defendants knew Jane Doe's statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Taylor Buttons' design work, custom automotive creations, sponsorships, commercial shoots, events, marketing, advertising and speaking engagements, all of which were destroyed as Plaintiff Taylor Button was his own goods and services, as his name and career was his brand and his business.

216.     Defendants' intentionally made the decision in allowing their ▮▮▮▮ and/or their client to make false and defamatory statements which spread like fuel-soaked wildfire throughout the dance industry and community, automotive industry and community and further, to dance and automotive forums including but not limited to Facebook, Reddit and TikTok and was widely spread via communications through

various messaging platforms nationally and internationally, causing extreme distress and harm to Plaintiffs.

217.    Defendants' negligence and concealment of fraud allowed Jane Doe to make false and defamatory remarks to a mass media audience which were were intentionally dishonest and were stated for an improper motive with the intent to injure Plaintiffs without just cause or excuse.

218.    Defendants knew that, as a result of Jane Doe's false and fraudulent allegations, Plaintiffs would suffer financial harm and never be capable of generating revenue using their names again.

219.    Plaintiffs suffered complete loss of business and sales including that Plaintiffs income was solely based on a per performance basis whereas, Plaintiffs' income was generated upon completion of work as they were themselves, their business.

220.    For example, Plaintiff Dusty Button's teaching classes and performances were immediately canceled following the defamatory statements and heinous allegations made by Jane Doe.

221.    As another example, Plaintiff Dusty Button immediately lost any and all business with all scheduled dance studios, summer intensive courses, and events which she was scheduled to guest teach and choreograph for, including scheduled guest performance appearances nationally and internationally as a direct result of Defendants' negligence and conduct resulting in defamatory statements due to Jane Doe's fraudulent allegations.

222.    As another example, Plaintiff Taylor Button immediately lost any and all business related to his brands including his business and brand "Button Built", with all

scheduled events in the automotive industry including pre-planned design builds for clients and customers including prominent name brands which were sponsors of Plaintiff Taylor Button, all of whom canceled their builds and design concept work with Plaintiff for the foreseeable future.

223.    Further, Plaintiffs, both immediately lost any and all contracts with sponsors, endorsements and event appearances in their respective industries including but not limited to: BLOCH Inc., Tiger Friday, Capezio, Yumiko, MPG Sport, Fenti, Volcom, Discount Dance, RedBull, Adidas, WeWork,  Rotiform Wheels, Brixton Forged, Momo racing, Bride Racing, Nitto Tires, Toyo tires, Brembo, Ferrari Parts, Tial Concepts, Xona Rotor, Aviva Performance, Impressive Wraps, Inozetek, Tubi Style, Vivid Motorsport, Voodoo Automotive, SEMA Auto Show, Crep Protect, Accuair Suspensions, Currie axels, Pelican LLC, Greyman Tactical, PRP seats, KMC wheels, RAM mounts, Metalcloak suspension and body components, THULE, Rebel Offroad, PPG paint, Morimoto LED lighting solutions, BAJA off-road lighting solutions, Powertank, Maxxtraxx, HP tuners, Emory Motorsports, SABELT and Illest, amongst many others not listed here.

224.    Plaintiffs not only lost their business "Button Brand", suffering the complete destruction of their self-made brand but were forced to refund customers for items sold due to the connection of the false allegations and defamatory statements made by Jane Doe which could have been prevented upon discovery of her false allegations however, Defendants neglected their duties and instead, aided and abetting Jane Doe's fraud by concealing their actual knowledge of the false and malicious allegations brought forth by Jane Doe against Plaintiffs.

225.    Plaintiffs completely lost and forfeited their brand, Button Brand due to
defamatory statements made by Jane Doe as a result of her          negligence as they
knew the allegations were false in their entirety and did not disclose their knowledge
of the falsity of the allegations, further neglecting their duties to protect and warn and
leading to a direct cause of the fraud committed by Jane Doe.

226.    Plaintiffs had a pre-planned, negotiated contract with dancewear company
Tiger Friday whereas, Plaintiffs designed, licensed and would market the line of
leotards and dancewear utilizing the Button name and brand to expand their already
successful company and image.

227.    Plaintiffs' contract was immediately canceled as a direct result of Defendants'
negligence and concealment of fraud, further contributing the defamatory remarks and
false allegations made by Jane Doe.

228.    Plaintiffs' brand, Bravado by Dusty Button was a dancewear and leotard line
for dancers in which Plaintiffs had previous negotiated contracts with sponsored third-
party companies and distributors such as Discount Dance, Showstopper and GK Elite,
as well as advertised and garnered sales of this line through their own website
"bravadodancewear.com" and through Plaintiffs' former social media page on
Instagram, @bravado_dancewear and Plaintiffs' personal social media account,
@dusty_button.

229.    Bravado by Dusty Button was sold at various dance events for distribution,
whereas, sales and contracts were immediately terminated following $100,000.00 of
partner investment and nearly a year of travel and planning as a direct result of

Defendants' negligence and concealment of fraud, further contributing and allowing the defamatory remarks and false allegations made by Jane Doe.

230. Defendants' negligence, breach of duty and concealment of fraud forced the termination of Bravado by Dusty Button as all sales came to a halt and additionally, customers demanded refunds stating the brand was associated with "sexual predators", "perpetrators", "criminal behavior" and "rapists".

231. Immediately following the false and defamatory statements in the media and the press, Plaintiffs' businesses, Button Brand, Button Built, and Bravado by Dusty Button were completely destroyed, losing hundreds of thousands of dollars in revenue and costs, which were already paid, promised and negotiated with third party companies and distributors which was a direct result of Defendants' negligence, breach of duty, failure to disclose and concealment of fraud.

232. Any and all marketing for the above reference brands with associated accounts advertising those brands including all sales were terminated as a direct result of Defendants' conduct.

233. The seriousness of Defendants' conduct proves a clear intention to cause damage to Plaintiffs.

234. The nature and substance of the false allegations made by Jane Doe were encouraged, concealed and known by Defendants which resulted in the defamatory remarks and false allegations as Defendants had actual knowledge that her statements were untrue and proving that Defendants' conduct was willful, intentional, malicious, reckless and negligent.

235.    Defendants' conduct resulting in the false allegations made by Jane Doe made to a mass audience which she intended to, and did reach, proves without question, the intent to harm Plaintiffs' careers, businesses and reputations as the false statements were aimed *specifically* at Plaintiffs' colleagues, clients and target demographics through these defamatory statements in the global media campaign waged against them including but not limited to published defamatory statements in The New York Times, Cosmopolitan, The Boston Globe, ABC News, The Daily Mail, CNN and other mass media outlets including the press and nearly every major news outlet and social media account that were otherwise outside of Plaintiffs' industries.

236.    Defendants' conduct including concealment of fraud, breach of duty and negligence caused the *entire* dance industry to not only turn against Plaintiff Dusty Button, (who had worked her entire life to build the reputation she was known for in her industry and was at the pinnacle of her career), but caused the industry to disassociate from Dusty, repost the defamatory statements and false allegations and cease all communication with her, including halting any and all forms of employment for which she had been in extremely high demand for, for over fifteen years.

237.    Defendants' conduct including concealment of fraud, breach of duty and negligence caused the *entire* automotive industry to not only turn against Plaintiff Taylor Button, (who had worked over thirteen years to build the reputation of the idol he was and that he was known for in his industry and was at the pinnacle of his career), but caused the industry to disassociate from Taylor, repost the defamatory statements and false allegations and cease all communication with him, including

halting any and all forms of employment for which he had been in extremely high demand for, for over thirteen years.

238.      The false allegations and defamatory remarks made by Jane Doe ignited a viral response which spread like wildfire, resulting in a 'grapevine' effect throughout Plaintiffs' industries including to their co-workers, clients, employers, potential employers, ▮▮▮ and ▮▮▮ of those Dusty taught in the dance industry, sponsors, potential sponsors, friends and family involved in the industries, customers, former employers, agencies, dance studio owners and other various third parties whereas, Plaintiffs could not defend themselves against such widespread industry gossip which were preventable but instead, were encouraged by Defendants including by neglecting their duties, concealing fraud, failing to disclose pertinent information regarding Jane Doe upon discovery of her false allegations.

239.      Jane Doe specifically targeted Plaintiffs and told Defendants she was planning to or had filed false allegations against Plaintiffs, who she had never met whereas, Defendants had actual knowledge that Jane Doe's allegations were false and would harm Plaintiffs.

240.      As a direct cause of Defendants' negligence resulting in defamatory statements and a global media campaign waged against Plaintiffs, Plaintiffs have been unable to even have a ringtone, vibration or sound on their phones when notifications or calls come in, due to the influx of notifications, messages, harassment, death threats, unwanted threatening calls and the overwhelming immediate responses to the defamatory posts, comments and reposts whereas, Plaintiffs even had to take turns

watching for notifications on each other's phones to even sleep just one hour as the

harassing, threatening and defamatory remarks continued for months on end.

241.    To this day, Plaintiffs keep their phones on silent as it results in severe trauma

and PTSD as a direct result of the harassment they received following the false

allegations and defamatory statements made by Jane Doe, which were supported by

Defendants in an effort to conceal the fraud committed by Jane Doe.

242.    As previously stated herein, Plaintiffs' business, was their names and likeness

as they were individually contracted due to their reputations of who they were as a

business and as their names were their brands.

243.    Plaintiffs were well-known and prominent figures in their industries and

therefore, were contracted, employed and in high-demand because of their names and

reputations, as they, themselves were their businesses for over fifteen years.

244.    The shock and confusion from the defamatory statements, coupled with

Defendants' negligence resulted in intense threats, harassment, and severe bullying

including severe emotional trauma which has taken a tremendous toll of Plaintiffs and

their mental health.

245.    Plaintiffs were so traumatized by the actions of Jane Doe that they both

suffered from suicidal thoughts, nearly taking their own lives as a direct result of the

false allegations made by Jane Doe and which could have been prevented by

Defendants, were it not for their negligence, concealment of fraud, aiding and

abetting, failure to disclose, failure to protect and warn and breach of duties as ████

as an attorney and as a licensed clinical social worker; all whom had actual knowledge

of that the allegations brought forth by Jane Doe were false in their entirety.

246.     Defendants took affirmative steps to ensure Plaintiffs were without the ability
to seek recourse against them until now with the intentional harm they inflicted on
Plaintiffs by way of forcing them to be unemployed, by aiding and abetting the false
allegations made by Jane Doe, with no ability to generate income, releasing them of
any responsibility as they knew it was a possibility for their statutes of limitation to
expire before Plaintiffs could take action against them.

247.     Accordingly, any statute of limitations applicable to Dusty and Taylor's
claims, if any, is tolled.

248.     Defendants' actions described above deprived Dusty and Taylor of the
opportunity to commence this lawsuit before now.

249.     Defendants are equitably estopped from asserting a statute of limitations
defense as to Plaintiffs' claims.

250.     Allowing Defendants to do so would be unjust.

251.     Defendants took active steps to prevent Dusty and Taylor from commencing
this lawsuit before now, including by destroying Plaintiffs' ability to work including
by aiding and abetting the defamatory global media campaign against Plaintiffs and by
using tactical intimidation by way of using their power and influence to suppress and
silence Plaintiffs from defending against the false and defamatory posts and remarks
through litigation by Jane Doe.

252.     Plaintiffs received additional discovery regarding Defendants' conduct during
the course of discovery in Nevada whereas, Plaintiffs were not aware of such
negligence and concealment of fraud until the years 2022 and 2023 including but not
limited to the deposition of Jane Doe which exposed Defendants' ability to prevent the

harm from occurring but which they instead, concealed in an effort to assist Jane Doe while knowing her plan to defraud and defame Plaintiffs.

253.    Plaintiffs have suffered and continue to suffer mental anguish, severe emotional distress and loss of enjoyment of life as a direct and proximate result of Defendants' conduct and overall negligence.

254.    Had Plaintiffs succumbed to the darkness that Defendants cast over their lives, businesses, families and futures, this litigation would be criminal rather than civil, as they are responsible the fraudulent actions that nearly ended two lives that were once the brightest lights of their careers for millions of people abroad.

## CAUSES OF ACTION

## COUNT I – NEGLIGENCE

### *Plaintiffs against Defendants*

255.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 254, *supra*, as if set forth herein.

256.    Defendants Patrick and Elizabeth Hickle had a duty to prevent their ▇ from committing the criminal act of fraud against Plaintiffs having full understanding and awareness that their ▇ was mentally unwell and committed on a number of occasions in the past whereas their ▇ committed acts in the past to solely to garner attention and affection from them such as attempted suicide; as admitted by the ▇ under oath, themselves.

257.    Defendants Patrick and Elizabeth Hickle had a duty to Plaintiffs to prevent harm caused by their ▇ including but not limited to because their ▇ was under

their care at the time of the events alleged in their ▮▮▮ complaint against Plaintiffs in Nevada.

258.    Defendants Patrick and Elizabeth Hickle owed a duty to Plaintiffs whereas, upon discovery of their ▮▮▮ fraudulent allegations, Defendants' duty was to report the fraud committed by their ▮▮ to the police and to the District Court of Nevada.

259.    Defendants Patrick and Elizabeth Hickle owed a duty to Plaintiffs whereas, they knew their ▮▮ was mentally unwell and unstable, constituting a number of psychiatric stays as a minor including at the time of the events alleged by their ▮▮ but chose to ignore their ▮▮▮ psychotic and delusional behavior for years and recklessly allowing their ▮▮ to cause irreparable harm to Plaintiffs.

260.    Defendants Patrick and Elizabeth Hickle's failure to recognize the signs and symptoms of their ▮▮▮ mental health in years following the ▮▮ being committed as a minor was reckless and therefore was a direct a proximate cause of their ▮▮▮ harm committed against Plaintiffs.

261.    Defendants Patrick and Elizabeth Hickle failed to continue to seek medical help or treatment for their ▮▮▮ mental health when she was still a minor; after their ▮▮ showed signs and symptoms of causing harm to third parties.

262.    Defendants Patrick and Elizabeth Hickle failed to provide a stable and nurturing environment that supported their ▮▮▮ mental health, resulting in failure to address the root cause of their ▮▮▮ mental health issues, such as trauma or abuse prior to the fraudulent events alleged by their ▮▮ against Plaintiffs whereas; their ▮▮▮ delusional allegations were the direct and proximate cause of harm to Plaintiffs.

263.   Defendants Patrick and Elizabeth Hickle failed to meet the standard of care that a reasonable person would have maintained under the same circumstances as the Defendants' actions and lack thereof, fell below the standard of care that a reasonable person would have maintained under the same circumstances.

264.   Defendants' Patick and Elizabeth Hickle's conduct was the direct cause of Plaintiffs' harm whereas; Plaintiffs' harm would not have occurred but for the Defendants' conduct.

265.   Defendants' Patrick and Elizabeth Hickle's conduct was the legal cause of Plaintiffs' harm whereas the Defendants knew their ███ previously harmed various third parties by way of mental delusion, perjury, exaggeration and psychotic tendencies to garner attention.

266.   Plaintiffs suffered actual harm and loss as a result of the Defendants' negligence.

267.   Defendant Robin Melone had a duty to prevent her client from committing the criminal act of fraud against Plaintiffs having full understanding and awareness that their client was mentally unwell and was committed on a number of occasions.

268.   Defendant Robin Melone owed Plaintiffs a legal duty to prevent her client from committing fraud whereas, Defendant Robin Melone endorsed her client's fraud with reckless disregard to her client's mental instability and knowledge of her client's psychotic history including but not limited to her representation of her client's ███ whereas she owed a duty as a "family friend" to prevent her client from committing the heinous acts of fraud against Plaintiffs.

269.    Defendant Robin Melone, who is an attorney, had a duty to protect Plaintiffs from her client by ensuring that her client's actions did not harm them whereas the lawyer's duty is rooted in their professional responsibility to uphold the law and maintain the integrity of the legal system including by way of communicating with third parties, such as the ███████ of her client prior to her client committing fraud against Plaintiffs, resulting in irreparable harm.

270.    Defendant Robin Melone had a duty to protect Plaintiffs from her client including by advising her client on their duties, monitoring her client's behavior, taking corrective action, and communicating with affected parties whereas, Defendant Melone recklessly and negligently ceased all communication with Plaintiffs in order to allow her client to further commit fraud.

271.    Defendant Katherine Thonis had a duty to prevent her client from committing the criminal act of fraud against Plaintiffs having full understanding and awareness that her client was mentally unwell and was committed on a number of occasions including because she evaluated her client's mental health prior to her client being committed.

272.    Defendant Katherine Thonis had a legal duty to prevent her client from committing fraud whereas, Defendant Katherine Thonis endorsed her client's fraud with reckless disregard to her client's mental instability and knowledge of her client's psychotic history including but not limited to withholding knowledge that her client committed fraud resulting in irreparable harm.

273.    Defendant Katherine Thonis has a legal duty to prevent her client from harming Plaintiffs as she has a professional relationship with her client and did so at

the time in which the events took place, as described herein and as her client posed

and continues to pose a risk to others including because as the client's social worker,

she has a legal and ethical obligation to take reasonable steps to prevent harm to others

including Plaintiffs but failed to do so.

274.    Defendant Katherine Thonis had a duty to protect Plaintiffs from her client

by ensuring that her client's actions did not harm them whereas, the social worker's

duty is rooted in their professional responsibility to uphold the law including by way

of communicating with third parties, such as the ███████ of her client prior to her client

committing fraud against Plaintiffs, resulting in irreparable harm.

275.    Defendant Katherine Thonis owed Plaintiffs a legal duty to prevent her client

from committing fraud against them whereas, Defendant Thonis endorsed her client's

fraud with reckless disregard to her client's mental instability and knowledge of her

client's psychotic history including but not limited to her own evaluations of her client

whereas, she owed a duty to Plaintiffs to prevent her client from committing the

heinous acts of fraud against them.

276.    Defendant Katherine Thonis owed a duty to Plaintiffs whereas, social workers

must balance the need to maintain client confidentiality with the need to protect third

parties from harm, which in this case is Plaintiffs whereas, the fraud against Plaintiffs

required Ms. Thonis to disclose confidential information to authorities or other parties

to prevent harm, which she failed to do.

277.    Defendant Katherine Thonis failed her duty to report her client's delusional

and psychotic history to authorities resulting in direct and proximate harm to

Plaintiffs.

278.     Defendant Katherine Thonis owed a duty to Plaintiffs in preventing her client from committing fraud against them whereas, upon learning of the events alleged in the Nevada complaint, Ms. Thonis had a duty to report those allegations to her client's ███████ as the client was a minor at the time the alleged events took place in 2014 whereas, Ms. Thonis' failure to report resulted in direct harm against Plaintiffs.

279.     Ms. Thonis failed in her duty to warn and protect whereas, upon speaking with Plaintiffs in 2023 regarding her clients' allegations, she failed in her duty to disclose relative information which was not confidential in order to prevent her client from harming Plaintiffs and instead, allowed her client to continue harming Plaintiffs who committed fraud against them.

280.     Ms. Thonis failed in her duties to her client by allowing her to commit such fraud against Plaintiffs including by claiming such egregious false and fraudulent allegations whereas, the result will implicate her client in the criminal acts of fraud, perjury and false statements to a police officer amongst other heinous acts where her client will be held liable, ultimately harming her client.

281.     Defendants had an obligation to exhibit a reasonable degree of caution and prudence when engaging in actions that could affect others and as such, were obliged to exercise *reasonable care* but were negligent in providing that obligation resulting in direct harm to the Plaintiffs.

282.     The specific damage Plaintiffs experienced and continue to experience was foreseeable whereas, it should have been anticipated that the actions of Defendants would lead to the harm caused by the perpetrator therefore, Defendants are solely responsible for the harm caused to Plaintiffs.

283.    Defendants' actions and inactions caused *direct* and *actual* harm to Plaintiffs including by causing distress, humiliation, harassment from third parties, death threats, total loss of employment, total loss of business relationships, complete loss of wages, total loss of assets, suicidal thoughts and mental anguish which they continue to endure today.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants Patrick and Elizabeth Hickle, Robin Melone and Katherine Thonis for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT II

## AIDING AND ABETTING FRAUD AND A VEXACIOUS LITIGATION

### *Plaintiffs against Defendants*

284.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 254, *supra*, as if set forth herein.

285.    Defendants Patrick and Elizabeth Hickle, Robin Melone and Katherine Thonis each knew that their ▓▓ and/or their client committed fraud or intended to commit fraud resulting in the direct and proximate irreparable harm to Plaintiffs.

286.    Defendants knew the existence of an underlying fraud whereas, the fraud occurred and each Defendant had knowledge of its existence, which they continue to aid including at the time and date of this complaint being filed.

287.    Defendants had actual knowledge of the crime being committed by their ▓▓ and/or client and/or had actual knowledge of the crime which was being planned or committed and which is still being committed as of the time and date of this complaint being filed.

288.    Defendants' intended to provide help, aid, and/or encouragement to commit the crim and in did in fact, assist and/or encourage their ▓ and/or client in committing the crime in which Defendants continue to help, aid and/or encourage to continue committing as of the time and date of this complaint being filed.

289.    Defendants provided substantial assistance to their ▓ and/or client in achieving the fraud against Plaintiffs whereas, their actions and inactions significantly contributed to the success of the fraud against Plaintiffs in which their ▓ and/or client is continuing to commit as of the time and date of this complaint being filed.

290.    Defendants' actions and/or encouragement actually provided aid to the perpetrator whereas their actions and/or encouragement helped the perpetrator in committing the crime of fraud against Plaintiffs including but not limited to causing irreparable harm to Plaintiffs in which their ▓ and/or client is committing as of the time and date of this complaint being filed.

291.    Defendants provided financial support and/or resources to their ▓ and/or client who planned to commit a crime against Plaintiffs and who is continuing to commit such a crime against Plaintiffs as of the time and date of this complaint being filed.

292.    Defendants helped to conceal or cover up evidence of a crime being committed by their ▓ and/or their client whereas all Defendants were in direct contact with Plaintiffs regarding the perpetrators crimes and intentionally withheld and/or concealed information regarding their ▓ and/or clients' actions of fraud against Plaintiffs including but not limited to lying to the police and to the District Court of Nevada which is a Federal agency to protect the fraudulent actions of the perpetrator

COMPLAINT AND DEMAND FOR JURY TRIAL

therefore, irreparably harming Plaintiffs in which continues as of the time and date of this complaint.

293.     Defendants failed to report their ▮▮▮▮ and/or clients' fraud and did not take action to stop it from happening including by encourage, enforcing and/or aiding the perpetrator to commit and continue to fraud against Plaintiffs, causing irreparable harm which is continuing as of the time and date of this complaint being filed.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants Patrick and Elizabeth Hickle, Robin Melone and Katherine Thonis for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT III

## BREACH OF DUTY

### *Plaintiffs against Defendants*

294.     Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 254, *supra*, as if set forth herein.

295.     Defendants owed Plaintiffs a duty.

296.     Defendants Patrick and Elizabeth Hickle had a duty to Plaintiffs to take charge of a person, (in this case their ▮▮▮▮ who they knew or should have known was likely to cause harm to others if not controlled.

297.     Patrick and Elizabeth Hickle had actual knowledge of their ▮▮▮▮ mental health deterioration and history of pathological lying including that their ▮▮▮ has never met Plaintiffs in her entire life but has accused Plaintiffs of raping her at gunpoint as a minor, while living with her ▮▮▮ Patrick and Elizabeth Hickle, in New Hampshire, in the year of 2014.

298.     Katherine Thonis had actual knowledge of her client's mental health
deterioration and history of pathological lying including that her client has never met
Plaintiffs in her entire life but has accused Plaintiffs of raping her at gunpoint as a
minor in the year of 2014.

299.     Katherine Thonis had actual knowledge that her client caused Plaintiffs harm
by filing a frivolous lawsuit against them which alleged heinous and egregious crimes
about them and did nothing to protect and warn as required by her duties as a social
worker and instead, assisted her client in continuing to commit fraud against Plaintiffs.

300.     Robin Melone had actual knowledge of her client's mental health deterioration
and history of pathological lying including that her client has never met Plaintiffs in
her entire life but has accused Plaintiffs of raping her at gunpoint as a minor in the
year of 2014.

301.     Robin Melone had actual knowledge that her client caused Plaintiffs harm by
filing a frivolous lawsuit against them which alleged heinous and egregious crimes
about them and did nothing to prevent her client from harming Plaintiffs as required
by her legal duties as a criminal defense attorney and instead, assisted her client in
contacting Boies Schiller Flexner to commit fraud against Plaintiffs.

302.     Patrick and Elizabeth Hickle failed to meet their obligations and
responsibilities to Plaintiffs by allowing their ▆▆▆▆ to commit fraud against
Plaintiffs, knowing their ▆▆▆▆ had never met Plaintiffs and likewise, knowing their
▆▆▆▆ had never been to Plaintiffs' home in Somerville, MA, (which did not exist at
the time their ▆▆▆▆ alleges her rape at gunpoint took place).

303.    Katherine Thonis failed to meet her obligations and responsibilities to

Plaintiffs by allowing and assisting her client to commit fraud against Plaintiffs,

knowing her client had never met Plaintiffs and additionally, knowing her client had

never been to Plaintiffs' home in Somerville, MA, (which did not exist at the time her

client alleges her rape at gunpoint took place).

304.    Robin Melone failed to meet her obligations and responsibilities to Plaintiffs

by allowing and assisting her client to commit fraud against Plaintiffs, knowing her

client had never met Plaintiffs and additionally, knowing her client had never been to

Plaintiffs' home in Somerville, MA, (which did not exist at the time her client alleges

her rape at gunpoint took place).

305.    Patrick and Elizabeth Hickle breached their duties, including by inflicting

severe harm against Plaintiffs.

306.    Patrick and Elizabeth Hickle owed a duty to their ████████

307.    Patrick and Elizabeth Hickle breached their duties, including but not limited to

by neglecting their ████████ mental health deterioration and allowing their ████████

to commence a frivolous lawsuit against Plaintiffs, who she has never met while

alleging heinous and egregious crimes against them, knowing they were fraudulent.

308.    Katherine Thonis owed a duty to her client.

309.    Katherine Thonis breached her duties, including but not limited to by

neglecting to protect and warn regarding her client's mental health and psychotic

tendencies and allowing her client to commence and continue a frivolous lawsuit

against Plaintiffs, who her client has never met, while alleging heinous and egregious

crimes against them, knowing they were fraudulent.

310.      Robin Melone breached her duties, including but not limited to by neglecting her duty of honesty regarding her client's mental health and psychotic tendencies and allowing her client to commence and continue a frivolous lawsuit against Plaintiffs, (including by putting her in contact with an attorney from Boies Schiller Flexner), who her client has never met while alleging heinous and egregious crimes against them, knowing they were fraudulent.

311.      Defendants' conduct proximately caused Plaintiffs to suffer severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

312.      Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiffs' rights.

313.      Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

314.      Defendants' actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

315.      Defendants are equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

316.      Allowing Defendants to do so would be unjust.

317.      WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT IV

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

### *Plaintiffs against Defendants*

COMPLAINT AND DEMAND FOR JURY TRIAL

318.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1
through 254, *supra*, as if set forth herein.

319.    Plaintiffs were an established brand in and of themselves who did business
nationally and internationally, providing services to employers, sponsors, agencies and
various other third parties, and had developed an excellent reputation in the dance and
automotive industries.

320.    Since September 23rd, 2021, Plaintiffs have worked for various employers
including but not limited to SEMA as well as other entities which are either affiliated
with, associated with, or under the control or ownership of the same principals who
own and control SEMA.

321.    Since September 23rd, 2021, Plaintiffs have worked for various employers
including but not limited to entities which are either affiliated with, associated with, or
under the control or ownership of the same principals who own and control the
Instagram account @formuladerp.

322.    Since September 23rd, 2021, Plaintiffs have worked for various employers
including but not limited to TOYO Tires as well as other entities which are either
affiliated with, associated with, or under the control or ownership of the same
principals who own and control TOYO Tires.

323.    Since September 23rd, 2021, Plaintiffs have worked for various employers
including but not limited to individual entities identified as private third-party
individuals within their respective industries as well as other entities which are either
affiliated with, associated with, or under the control or ownership of the same

principals who own and control those private third-party individuals which employed or otherwise contracted Plaintiffs for one-time events and/or individual jobs.

324.     Upon information and belief, Plaintiff Taylor Button was referred to SEMA because, in part, of his excellent reputation. Due to the continuing and developing relationship with SEMA and affiliated entities, Taylor Button had developed business which generated revenue for services provided.

325.     Upon information and belief, Plaintiff Taylor Button was referred to affiliates of @formuladerp because, in part, of his excellent reputation. Due to the continuing and developing relationship with affiliated entities of @formuladerp, Taylor Button had developed business which generated revenue for services provided.

326.     Upon information and belief, Plaintiff Taylor Button was referred to TOYO Tires because, in part, of his excellent reputation. Due to the continuing and developing relationship with TOYO Tires and affiliated entities, Taylor Button had developed business which generated revenue for services provided.

327.     Upon information and belief, Plaintiffs were referred to individual private third-parties because, in part, of their excellent reputation. Due to the continuing and developing relationship with innumerable individual private third-parties and affiliated entities, Plaintiffs had developed business which generated revenue for services provided.

328.     At some point, (and at different times) in 2021, SEMA, affiliates of @formuladerp, TOYO Tires and innumerable private third-party individuals, (among other sponsors and/or employers), became hesitant and or reluctant to use Plaintiffs'

services due to the forementioned fraud committed by Defendants'           and/or
client.

329.    At or about this same time, the forementioned companies revealed that their
hesitancy to work with Plaintiffs stemmed from the egregious and heinous, false
allegations stated by Defendants'           and/or client.

330.    Plaintiffs later learned that Defendants had made disparaging and false remarks
or assisted in making disparaging and false remarks about Plaintiffs including false
and defamatory rumors regarding criminal activity, (which never occurred), their
integrity, and professionalism to the forementioned companies and that Defendants
had encouraged and assisted in the termination of Plaintiffs' contracts and business
relations.

331.    The forementioned companies and the related entities then terminated their
relationships with Plaintiffs as a direct cause of Defendants' actions and/or inactions
to prevent harm as required by their duty to Plaintiffs.

332.    Defendants acted intentionally and maliciously in interfering with Plaintiffs'
relationship with the forementioned companies and its affiliates.

333.    The foregoing actions on the part of Defendants constitute an unlawful
interference with contractual relations between the forementioned companies:
(A) there was a contractual relationship between Plaintiffs and the forementioned
companies.

(B) Defendants clearly knew of Plaintiffs' contractual relationships with the
    forementioned companies.

(C) Defendants wrongfully interfered with Plaintiffs contractual relations;

(D) Defendants' interference is the reason for the loss of Plaintiffs' contractual relationship with the forementioned companies; and

(E) as a result of Defendants' actions, Plaintiffs have been severely and irreparably damaged.

334.     Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

335.     Defendants' actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

336.     Defendants are equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

337.     Allowing Defendants to do so would be unjust.

338.     Plaintiffs were not aware of Defendants' actions prior to 2021 until the discovery process in the Nevada litigation began whereas, Plaintiffs received discovery proving the forementioned statements to be true in and around the end of the year 2022 and in 2023 including deposition testimony from Patrick and Elizabeth Hickle's ███████ Ms. Thonis' client and Ms. Melone's client.

339.     WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### *Plaintiffs against Defendants*

340.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1
through 254, *supra*, as if set forth herein.

341.    Defendants acted intentionally and/or recklessly when either aiding and
abetting their ▮▮▮▮▮ and/or client's crimes against Plaintiffs including by
neglecting to protect and warn upon discovery of their ▮▮▮▮▮ and/or client's fraud
and egregious acts of harm against Plaintiffs.

342.    Defendants' conduct was a direct and proximate cause of harm to Plaintiffs
resulting in severe emotion distress due to the actions and/or inactions of Defendants'
willful and/or reckless behavior in engaging, assisting and abetting Jane Doe's fraud
against Plaintiffs.

343.    Defendants were actively involved in assisting Jane Doe in commencing and
continuing a frivolous lawsuit against Plaintiffs with false allegations of sexual abuse,
sex trafficking, forced labor, involuntary servitude, battery, assault, false
imprisonment, intentional infliction of emotional distress, breach of fiduciary duty and
sexual exploitation of a minor whereas, Defendants either knew or later discovered
that their ▮▮▮▮▮ and/or client's allegations were fraudulent and would
undoubtedly and severely bring harm on Plaintiffs.

344.    No reasonable person in Jane Doe's circumstances would have believed that
there were reasonable grounds to bring the lawsuit against Plaintiffs including
Plaintiffs have never met Defendants' ▮▮▮▮▮ and/or client and because upon Jane
Doe's own admissions, Patrick and Elizabeth Hickle, Katherine Thonis and Robin
Melone all had *actual* knowledge of her intent to commit fraud against Plaintiffs.

345.    Plaintiffs were *severely* and irreparably harmed by Jane Doe's fraudulent complaint against them whereas, Plaintiffs have not been able to work a single job due to the false and defamatory allegations and their names being globally recognized in the media as Jane Doe and her counsel waged a global media campaign against Plaintiffs; including because Defendants were all engaged in assisting Jane Doe committing fraud against Plaintiffs.

346.    Defendants' conduct was a substantial factor in causing harm on Plaintiffs as Defendants' actions and/or inactions in aiding and abetting their ███ and/or client in committing fraud against Plaintiffs, including the salacious and defamatory statements to third parties which were a direct and proximate cause of Defendants' conduct entirely disseminated any and all employment, sponsorships and relationships with employers, sponsors, clients or businesses which previously respected and employed or sponsored Plaintiffs including defamatory statements which were not only made in person but on social media and in the news.

347.    Defendants' conduct was extreme and outrageous whereas; Defendants Patrick and Elizabeth Hickle withheld pertinent information from a Court Ordered subpoena issued and served by Plaintiffs in regard to their ███ including therapy records which verified the mental instability and psychosis of their ███ resulting in direct and proximate cause of harm against Plaintiffs.

348.    Defendants' conduct was extreme and outrageous whereas; Ms. Thonis lied to law enforcement following a telephonic conversation with Plaintiffs' whereas Plaintiffs described the nature of the call relating to her client and the fraudulent allegations which her client stated under oath she told to Ms. Thonis, whereas Ms.

Thonis stated, "I have no idea what you're talking about", leading Plaintiffs to contact law enforcement as Katherine Thonis failed in her duty to report a sexual assault of a minor, her client and/or state that her client's allegations were false.

349.     Ms. Thonis' actions were a direct and proximate cause of harm against Plaintiffs.

350.     Defendant, Katherine Thonis assisted her client by lying to Plaintiffs on the phone call and later, to law enforcement who Plaintiffs contacted following their call with Ms. Thonis whereas; Ms. Thonis aided and abetted her clients' fraud and instead of protecting and warning Plaintiffs of her clients' psychosis, enabled her to continue her fraud, causing extreme emotional distress and harm to Plaintiffs.

351.     Defendants' conduct was extreme and outrageous whereas; Ms. Melone withheld pertinent information from a Court Ordered subpoena issued and served by Plaintiffs in regard to client; including that her client stated under oath that Ms. Melone was aware of the allegations and was her attorney at the time she presented her allegations to her whereas Ms. Melone put her client in contact with Boies Schiller Flexner and aided and abetting her clients' fraud by affirming her clients' allegations while knowing they were false, causing extreme emotional distress and harm to Plaintiffs.

352.     WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT VI

## ██████ LIABILITY

*Plaintiffs against Patrick and Elizabeth Hickle*

353.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1
through 254, *supra*, as if set forth herein.

354.    Patrick and Elizabeth Hickle were financially responsible for their ████
mental health, admitting her on a number of occasions into psychiatric care and later
and financially supporting her mental instability by way of paying for her therapy and
admittance into the psych ward as an adult.

355.    Patrick and Elizabeth Hickle provided a home for Jane Doe as a minor and as
an adult as they were financially responsible for her.

356.    Patrick and Elizabeth Hickle are liable for negligence whereas they made no
effort to protect society, including Plaintiffs, from their ████

357.    Patrick and Elizabeth Hickle had actual knowledge of their ████
psychotic tendencies and behavior including pathological lying, attempted suicide to
garner attention, (as admitted in their ████ deposition), domestic violence
disputes, drug addictions, eating disorders and abusive tendencies toward them
whereas, Defendants were in possession of their ████ therapy records which
showed that from the age of at least thirteen, she was mentally unstable.

358.    Defendants Patrick and Elizabeth Hickle had actual knowledge of their
████ mental instability whereas, Mr. Hickle worked at the hospital where his
own ████ was admitted and prescribed medication for her mental instability years
prior to making the fraudulent allegations against Plaintiffs.

359.    Defendants Patrick and Elizabeth Hickle knew their ████ filed a frivolous
lawsuit against Plaintiffs as their ████ admittedly stated under oath that her

drove her to and from Massachusetts in the year of 2014 when their ▮▮▮▮
stated her false and egregious allegations took place, thereby proving Defendants
aided in the fraud against Plaintiffs as they knew her allegations were false.

360.    Patrick and Elizabeth Hickle knew the history of their ▮▮▮▮ mental health
and instability whereas, it is noted in years-worth of therapy records that their
▮▮▮▮ attempted suicide to garner attention from her ▮▮▮▮

361.    Patrick and Elizabeth Hickle knew the history of their ▮▮▮▮ mental health
and instability whereas, it is noted in years-worth of therapy records and through
deposition testimony of their ▮▮▮▮ that she admitted to her ▮▮▮▮ she attempted
suicide due to a break up with her boyfriend, later stated that she lied to her ▮▮▮▮
and that her suicide attempt was actually due to trauma caused by Plaintiffs, (who
have never met, spoken or heard of her in their entire lives).

362.    Defendants Patrick and Elizabeth Hickle had notice of past harmful conduct by
their ▮▮▮ and had an opportunity to control their ▮▮▮ but failed to do so.

363.    The incident caused by Defendants' ▮▮▮ was foreseeable and therefore,
Defendants are liable for their adult ▮▮▮▮ conduct.

364.    As stated, *supra*, Defendants Patrick and Elizabeth Hickle provided their
▮▮▮▮ residence, controlled her personal assets, provided her financial support
and directed her psychiatric treatment thereby "taking charge" of their adult ▮▮▮▮
therefore, Defendants are liable based on the dependency of the dangerous person and
the foreseeability of harm on Plaintiffs.

365.    Defendants were aware that their ▮▮▮ dangerous propensities presented an
unreasonable risk of harm to others.

WHEREFORE. Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT VIII – CIVIL CONSPIRACY

### *Plaintiffs against Defendants*

366.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 254, *supra*, as if set forth herein.

367.    Defendants conspired by sharing a common plan to commit a civil wrong against Plaintiffs including that Defendants agreed to encourage, support and/or conceal their ▮▮▮ and/or client's fraud against Plaintiffs including by knowingly suppressing the truth that the allegations stated by Defendants' ▮▮▮ and/or client were fraudulent.

368.    Upon discovery that Defendants' client and/or ▮▮▮ committed acts of fraud against Plaintiffs, Defendants' knowingly and willingly participated in a conspiracy to conceal the fraud against Plaintiffs by aiding and abetting that fraud as demonstrated by recorded telephonic call, deposition testimony and written email communications between Plaintiffs and Defendants.

369.    Defendants' actions resulted in "Unfair Competition" by way of coordinating efforts to spread false information about Plaintiffs, (whose names and likeness were their business), to gain an advantage, as to destroy Plaintiffs' reputations, careers, business, ability to work and defend themselves against the defamatory statements and litigation itself.

370.    Defendants' actions were unlawful including that the defamatory statements they allowed Jane Doe 1 to make, publish or encourage were intentional and wrongful interreferences with Plaintiffs' business relationships.

371.    Defendants intentionally and knowingly made or encouraged false statements about Plaintiffs to a mass audience, performing an unlawful act to gain notoriety and mislead the public and any potential juror through social media, the media and the press to secure bias against Plaintiffs, including while knowing their ▮▮▮▮ and/or client's allegations were frivolous and fraudulent.

372.    Defendants conspired to ensure Plaintiffs' good names, their likeness, careers, reputations and business relations were destroyed by spreading false and frivolous rumors and engaging in fraud to cover for their ▮▮▮▮ and/or their client; which resulted in complete loss of any and all employment, sponsorships and business relationships between Plaintiffs and innumerable third parties and businesses.

373.    Moreover, the statements made by Defendants and/or their ▮▮▮▮ or client tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute *Civil Conspiracy.*

374.    As a direct and proximate result of the maliciously false and defamatory statements made in litigation and to innumerable third parties by Defendants and Jane Doe, Plaintiffs have been *severely damaged* and irreparably harmed.

1    WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against

2  Defendants for damages, punitive damages, court costs, and such other relief as the Court

3  deems just and proper.

### PRAYER FOR RELIEF

    WHEREFORE, Plaintiffs respectfully request judgment against Defendants,

awarding compensatory, consequential, exemplary, and punitive damages in an amount to be

determined at trial, including but not limited to:

A.  Entering judgment against the Defendants on all claims made against them
    in this Complaint;

B.  Entering an Order directing that Defendants pay Plaintiffs reasonable fees
    and costs pursuant to any applicable law;

C.  For actual damages in an amount to be proven at trial;

D.  For punitive damages in an amount to be proven at trial;

E.  For costs of suit;

F.  For pre-judgment and post-judgment interest on the foregoing sums;

G.  For such other and further relief as the Court deems proper.

### DEMAND FOR JURY TRIAL

    Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby request a trial

by jury on all causes of action asserted within this pleading.

Respectfully dated this 15th day of July, 2024,

_____

Dusty Button and Mitchell Taylor Button (*Pro se)*
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
Email: worldofdusty@gmail.com
Phone: 310-499-8930
Phone: 310-499-8702

COMPLAINT AND DEMAND FOR JURY TRIAL

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was mailed to Office of the Clerk of Court United States District Court for the District of New Hampshire Warren B. Rudman United States Courthouse, 55 Pleasant Street - Room 110 Concord, New Hampshire 03301-3941 on July 15th, 2024.

Dated this 15th day of July, 2024,

/s/_____

Signature of Plaintiff Dusty Button (*Pro se*)

/s/_____

Signature of Plaintiff Mitchell Taylor Button (*Pro se*)