UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Dusty Button and
Mitchell Taylor Button,
       Plaintiffs

v.                                    Case No. 24-cv-220-SM-AJ
                                      Opinion No. 2024 DNH 107

John Roe, Jane Roe, Robin Melone,
and Katherine Thonis,
       Defendants

**O R D E R**

Pro se plaintiffs Dusty and Taylor Button bring this action
against John and Jane Roe, Robin Melone, and Katherine Thonis,
advancing several state common law claims.  All of those claims
arise out of, or relate to, ongoing litigation in the United
States District Court for the District of Nevada.  Pending
before the court are motions to dismiss filed by John and Jane
Roe (document no. 27) and Robin Melone (document no. 28),
asserting that none of plaintiffs' claims against them states a
viable cause of action.  See generally Fed. R. Civ. P. 12(b)(6).
For the reasons discussed, those motions are granted.

**Standard of Review**

When considering a motion to dismiss, the court accepts all well-pleaded facts alleged in the complaint as true, disregards legal labels and conclusions, and resolves reasonable inferences in the plaintiffs' favor. See Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017). The court may also consider documents referenced by or incorporated into the complaint. See Kando v. Rhode Island State Bd. of Elections, 880 F.3d 53, 56 (1st Cir. 2018).

To avoid dismissal, the complaint must allege sufficient facts to support a "plausible" claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To satisfy that plausibility standard, the factual allegations in the complaint, along with reasonable inferences, must show more than a mere possibility of liability – that is, "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Lyman v. Baker, 954 F.3d 351, 359–60 (1st Cir. 2020) ("For the purposes of our [12(b)(6)] review, we isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.") (citation and internal punctuation omitted).

In other words, the complaint must include well-pled (i.e.,
non-conclusory, non-speculative) factual allegations as to each
of the essential elements of a viable claim that, if assumed to
be true, allow the court to draw the reasonable and plausible
inference that the plaintiffs are entitled to the relief sought.
See Tasker v. DHL Retirement Savings Plan, 621 F.3d 34, 38-39
(1st Cir. 2010).

## Background

### I.   The Nevada Litigation

This case has its origins in civil litigation currently
pending in the United States District Court for the District of
Nevada.  See Humphries, et al. v. Button, Case no. 2:21-cv-
01412-APG-VCF (the "Nevada Litigation").  In it, six women claim
to have been victims of sexual exploitation and assault at the
hands of both Dusty Button and Taylor Button – the plaintiffs in
this case.  The claims advanced by one of the plaintiffs in the
Nevada Litigation – "Jane Doe 1" – are relevant here because the
Buttons allege that based upon each defendant's particular
relationship with Jane Doe, each knew (or should have known)
that Jane Doe's claims in the Nevada Litigation are false and
each had (but breached) a duty to prevent Jane Doe from
spreading those false claims.  Those breached duties, say the

3

Buttons, give rise to the common law claims they advance in this forum.

The Nevada Litigation began in July of 2021, with two named plaintiffs.  In September of 2021, Jane Doe and two other named women joined as plaintiffs.  Three months later, another three women joined the litigation, bringing the total number of plaintiffs to seven (one plaintiff has since withdrawn from the litigation).  According to Jane Doe, she met the Buttons when she was a dancer at a contemporary dance company that rented space from the Boston Ballet.  At the time, Jane Doe knew that Dusty Button was a dancer with the Boston Ballet and that she had a large social media following.  Dusty Button watched several of Jane Doe's dance classes and eventually befriended her and worked to garner her trust and loyalty.  Nevada Litigation, Third Amended Complaint (document no. 221), at paras. 133-35.

Dusty then introduced Jane Doe to her husband, Taylor Button.  According to Jane Doe, "the Buttons promised to help Jane Doe network in the dance industry, grow her social media following, attend prestigious dance conventions, and access other professional opportunities.  These promises of

4

professional mentorship, opportunity, and support were invaluable to Jane Doe 1." Id. at para. 137.

Jane Doe alleges that one night the Buttons invited her to a party in Boston, where they forced her to drink alcohol and drugged her.  She says she:

> soon became incapacitated and felt she did not have control over her body.  Jane Doe 1 believes she was drugged by the Buttons.
>
> The Buttons then brought Jane Doe 1 back to their apartment.  They led Jane Doe 1 into a room that had a mattress on the floor and what appeared to Jane Doe 1 to be guns hanging on the wall.  The Buttons pushed Jane Doe 1 onto the mattress.
>
> Dusty began kissing Jane Doe 1 and touching Jane Doe 1's body in a sexual manner.  Dusty held Jane Doe 1 down while Taylor performed oral sex on Jane Doe 1. Jane Doe 1 began to cry and told the Buttons to stop.
>
> Dusty continued to restrain Jane Doe 1, and Taylor forcibly penetrated Jane Doe 1.  Jane Doe 1 said "no" and "stop."
>
> At one point, Dusty held up her phone in a manner that indicated to Jane Doe 1 she was recording the rape. Jane Doe 1 believes Dusty took photos and/or videos of Taylor raping Jane Doe 1.
>
> At one point, Dusty had a gun in her hand.  Jane Doe 1 was terrified.
>
> In the years following the rape, Jane Doe 1 has experienced panic attacks, suicidal thoughts, and an eating disorder.  Jane Doe 1 has ceased pursuing a professional dance career.

Id. at paras. 139-45.

The Buttons deny Jane Doe's claims – indeed they say they have never met Jane Doe.  In this litigation, the Buttons advance seven intertwined claims, each of which attempts to impose liability on defendants for having breached a duty allegedly owed to the Buttons.  More specifically, the Buttons say the defendants breach those asserted duties by failing to prevent Jane Doe from making (allegedly false) claims in the Nevada Litigation or by somehow assisting Jane Doe in pursuing that litigation (by, for example, referring her to a lawyer).

For their part, John and Jane Roe say that this litigation is both a frivolous and vexatious attempt to intimidate friends and family of the Nevada plaintiffs.  According to the Roes, their:

> only connection to the Buttons is that Defendants are
> the [relatives] of an adult woman who sued the Buttons
> in the District of Nevada for sexual abuse, sex
> trafficking, and related causes of action.  In that
> action, the Defendants' [relative] is proceeding
> anonymously under the pseudonym Jane Doe 1, and she is
> suing the Buttons alongside five other women who also
> allege they were sexually abused by the Buttons (the
> "Nevada Plaintiffs").  The six Nevada Plaintiffs
> allege that the Buttons are seasoned sexual predators
> who carried out a years-long scheme to exploit their
> positions of power and prestige in the dance world to
> sexually abuse young dancers across the country.  Five
> of the six Nevada Plaintiffs – including the
> Defendants' [relative] – allege the Buttons sexually
> abused them when they were children.

> After being faced with the allegations of multiple
> women, the Buttons quickly began to retaliate against
> their alleged victims.  For example, the Buttons filed
> counterclaims against certain of the Nevada Plaintiffs
> and asked the Court to impose Rule 11 sanctions on
> their counsel (which the Court denied on multiple
> occasions).  The Nevada Plaintiffs also allege that
> during the Nevada litigation, the Buttons began
> harassing them on the internet by creating websites
> and YouTube videos mocking and intimidating them.
>
> When those tactics failed to dissuade the Nevada
> Plaintiffs from pursuing their claims, the Buttons
> began filing vexatious lawsuits against the Nevada
> Plaintiffs and their loved ones, including the instant
> lawsuit.  Specifically, over the last several months,
> the Buttons have filed at least six lawsuits against
> their alleged victims' family, friends, attorneys, and
> other potential supporters.  The instant lawsuit is
> part of that retaliation campaign, and is a
> transparent tactical maneuver designed to intimidate
> potential third-party witnesses in the Nevada lawsuit.
> Notably, beyond responding to a document subpoena
> served by the Buttons, the Defendants have had zero
> involvement in the Nevada lawsuit to date.

Motion to Dismiss (document no. 34) at 1-2.  Those claims –
which the court need not specifically address – do find some
support in the "Notice of Voluntary Dismissal" filed by one of
the plaintiffs in the Nevada litigation.  In it, she reported
that she was withdrawing her claims against the Buttons "due to
severe online harassment from [the Buttons] in retaliation for
her claims."  Nevada Litigation, Notice of Voluntary Withdrawal
(document no. 132) at pages i-ii.[1]

---

[1]    The court notes that the Buttons did move to strike that
language from the Notice of Voluntary Withdrawal but, following
a hearing on the matter, the Nevada court denied that motion.

Additionally, the Roes say the Buttons filed this
litigation in violation of several sealing and confidentiality
orders issued by the Nevada court and they advance that argument
as one basis for dismissal.  See generally Fed. R. Civ. P.
41(b).

Perhaps unsurprisingly, after the Buttons initiated this
lawsuit, Jane Doe filed a motion in the Nevada Litigation
seeking sanctions against the Buttons for having violated
several orders of the court that prohibit the public disclosure
and/or use of her confidential information disclosed during the
discovery process.  Those orders provide that, "recipients of
Confidential Discovery Material under this Order may use such
material solely for the prosecution and defense of this [Nevada]
action," and state that "Any person who learns either of the Doe
Plaintiff's identities pursuant to this Protective Order shall
use that information only for purposes of this litigation and
shall not disclose either of the Doe Plaintiff's identities to
anyone except persons identified in Paragraph 2, absent court
order."  Nevada Litigation, Confidentiality Orders (documents
no. 51 and 53) (emphasis supplied).

According to Jane Doe, the Buttons' complaint in this case,
which was neither authorized by the federal court in Nevada nor

originally filed under seal, "(1) includes the full names of
Jane Doe 1's [relatives] without redacting her [relatives']
first or last names, (2) reveals and quotes from information
from Jane Doe 1's highly sensitive medical records, which were
produced in discovery and designated Highly Confidential under
the Protective Order, and (3) reveals information from Jane Doe
1's deposition transcript in this case, which was designated
confidential under the Protective Order."  Nevada Litigation,
Motion for Sanctions (document no. 372), at 4.

The United States District Court for District of Nevada
agreed, holding that:

> It is beyond debate that I have entered several Orders
> regarding confidentiality requiring the non-public
> disclosure of Jane Doe 1's name, personal information,
> and materials marked as confidential or highly
> confidential produced in this case.  A non-exclusive
> list of these Orders includes ECF Nos. 51 (a
> protective order), 53 (also another protective order),
> 163 at 61-62 (including that materials disclosed in
> discovery could be used for no purpose other than the
> instant litigation), and 166 (a supplemental
> stipulated protective order).
>
> On July 19, 2024, the Buttons filed an action in the
> District of New Hampshire against Jane Doe's
> [relatives], as well as an attorney and therapist
> associated with Jane Doe 1.  My review of the docket
> in the New Hampshire matter shows numerous documents
> were filed many of which are now sealed.  Despite the
> filing of sealed documents Plaintiffs demonstrate that
> redacted versions of filings contain the names of Jane
> Doe's family members and other confidential
> information in violation of my prior Orders.

> The disclosure of information that could only come
> from confidential deposition testimony or medical
> records <u>violates the Court's Order</u> making clear that
> once such information is obtained it cannot be used
> for any purpose other than this litigation.  Said
> plainly, this Court's Orders establish that certain
> information disclosed in this case cannot be used in
> other cases even when related and in federal court.
> . . . <u>Defendants [the Buttons] are in violation of
> this Court's numerous, well documented Orders
> regarding confidentiality</u>.

<u>Humphries, et al. v. Button</u>, No. 2:21-CV-01412-ART-EJY, 2024 WL

5010003, at *1 (D. Nev. Nov. 21, 2024).[2]


    Still pending before the Nevada court is Jane Doe's

separate motion seeking "case ending sanctions" against the

Buttons for, among other things, having "publicized Jane Doe 1's

highly sensitive therapy records - including her purported

medications, diagnoses, and prior traumas - in a public

complaint against Jane Doe 1's [relatives in New Hampshire].

---

[2]    By order dated October 25, 2024 (document no. 37), this
court ordered that Jane Doe's relatives "shall proceed
anonymously as Jane Roe and John Roe.  Their names shall be
changed for all purposes in this case, including on the docket.
All of the parties shall review the docket in this case to
identify all previously filed documents that use the actual
names of Jane Roe and John Roe, shall file the original versions
under seal at Level 1, and shall file amended versions of those
documents substituting Jane Roe and John Roe.  All future
filings shall use Jane Roe and John Roe to refer to those two
defendants and shall use Jane Doe 1 to refer to the plaintiff
who is proceeding under that pseudonym in the Nevada case."

Defendants then republished those complaints on their public
Instagram account, which contains menacing language and imagery
designed to frighten Plaintiffs and their loved ones.
Defendants' disregard for this Court's orders could not be more
brazen, and their attempts to intimidate third-party witnesses
is a crime."  Nevada Litigation, Motion for Case-Ending
Sanctions (document no. 402), at 1.


II.  <u>The Buttons' Claims</u>

In this proceeding, the Buttons have brought seven common
law claims against Jane Doe's relatives (Jane and John Roe),
Jane Doe's licensed clinical social worker (Katherine Thonis),
and a Massachusetts attorney who is a family friend of the Roes
(Robin Melone).  Specifically, in their Amended Complaint
(document no. 26), the Buttons advance six claims against all
defendants:

Count 1    <u>Negligence</u>: defendants breached their duty
           to protect the Buttons from harm caused by
           Jane Doe's false accusations in the Nevada
           Litigation;

Count 2    <u>Aiding and Abetting Fraud</u>: defendants
           actively assisted Jane Doe in committing
           "fraud" against the Buttons and the Nevada
           court – that is, they failed to prevent Jane
           Doe from joining the ongoing Nevada
           Litigation – causing the Buttons to suffer
           significant harm;

Count 3    "<u>Breach of Duty</u>": like count one, this count alleges that defendants breached their respective duties to protect the Buttons from harm caused by Jane Doe's allegations in the Nevada Litigation;

Count 4    <u>Tortious Interference with Business Relations</u>: defendants' failure to prevent Jane Doe from joining the Nevada Litigation interfered with the Buttons' existing and prospective business relationships, resulting in financial losses;

Count 5    <u>Negligent Infliction of Emotional Distress</u>: defendants breached various duties allegedly owed to the Buttons and caused them severe emotional distress; and

Count 7    <u>Civil Conspiracy</u>: defendants engaged in a concerted effort to harm the Buttons by "concealing" Jane Doe's "fraud" and allowing her to spread false information through the Nevada Litigation.

Finally, the Buttons advance an additional claim solely against John and Jane Roe: "Familial Liability" (count 6), asserting that as Jane Doe's relatives, Jane and John Roe owed a duty to the Buttons to "control" Jane Doe's behavior and prevent her from joining the Nevada Litigation.

In short, all claims advanced by the Buttons arise out of: (a) the alleged failure by one or more defendants to prevent Jane Doe from joining the civil litigation in Nevada; and/or (2) defendants' "facilitation" of Jane Doe's participation in that litigation.

12

**Discussion**

As noted above, three of the four defendants in this proceeding – John Roe, Jane Roe, and Robin Melone – move to dismiss all claims against them.  The Buttons object.  But, even construing the Buttons' 90-page, pro se complaint liberally, it is plain that it fails to describe any viable claims against either the Roes or Attorney Melone.  Of the many fundamental problems with that complaint, one is certainly this: Jane Doe is an adult, legally capable of making her own decisions.  She is not a ward of any named defendant.  She appears to have chosen to participate in the Nevada litigation of her own volition.  But, say the Buttons, the Roes and Attorney Melone were aware of her "mental health issues" and "propensity to lie." Consequently, the Buttons believe the defendants owed them some duty to actively prevent Jane Doe from participating in that litigation (which, again, the Buttons say is based upon false allegations of sexual assault, etc.).

Presumably, a Nevada jury will determine whether Jane Doe's allegations are truthful and actionable.  At this point, however, it is certainly premature to base any claims against Jane Doe's friends, family members, and confidants on some alleged failure to prevent her from making allegedly false assertions in that litigation.  Moreover, the allegations Jane

Doe has made against the Buttons in the Nevada pleadings (and in
her reports to the police and in her statements to other courts
and judicial officers) are absolutely privileged under New
Hampshire Law.  See, e.g., McGranahan v. Dahar, 119 N.H. 758,
769-70 (1979).  See also Currier v. Town of Gilmanton, 636 F.
Supp 3d 269, 272 (D.N.H. 2022); Hungerford v. Jones, 988 F.
Supp. 22, 27 (D.N.H. 1997).  And, if Jane Doe is immune from
liability arising out of her allegations in the Nevada
pleadings, it is difficult to imagine how defendants could be
liable for, say, referring Jane Doe to the lawyers who represent
her in that case or for failing to "prevent" her from joining
that litigation (as the Buttons claim).

Another fundamental problem with the Buttons' claims is
that they have failed to plausibly allege that there is anything
actually improper about the Nevada litigation.  It bears noting
that the Nevada Litigation has survived both the Buttons'
repeated motions to dismiss, as well as their motion for Rule 11
sanctions against Jane Doe and her counsel for allegedly basing
Doe's causes of action on false claims of sexual assault.  The
Buttons' bald and conclusory denials of Jane Doe's allegations
are wholly insufficient to show that the Nevada litigation is
meritless and based upon false accusations – a central component
of all of the Buttons' claims in this litigation.

Moreover, even if one were to assume that Jane Doe's claims in the Nevada Litigation are demonstrably false (something no court or police department has concluded), the Buttons have failed to plausibly allege that the Roes or Attorney Melone owed them any statutory or common law duty to prevent Jane Doe from joining in that litigation. Additionally, even if the Roes actually had such a duty, the Buttons' own Amended Complaint undermines their claim that the Roes had a reasonable opportunity to prevent Jane Doe from joining the Nevada Litigation. See Amended Complaint at para. 116 ("As admitted by Jane Doe, [Jane and John Roe] were specifically made aware of her complaint and her involvement in the litigation the day, or shortly after the day she filed the complaint."); para. 180 ("[Jane and John Roe] knew Jane Doe filed a complaint against plaintiffs shortly after she filed it, on September 21, 2021.") (emphasis supplied).

As for their claims against Attorney Melone, the Buttons acknowledge that Jane Doe never retained Melone to represent her in any matter, including the Nevada Litigation. Rather, they simply allege that when Jane Doe told Melone (a family friend) that the Buttons had raped her, Melone referred Doe to a law firm in New York City. Jane Doe subsequently retained that firm

(which represented the other plaintiffs in the Nevada
Litigation) and she was added as a plaintiff in the First
Amended Complaint.  So, when the Buttons allege that Attorney
Melone "assisted [Jane Doe] in filing a malicious and frivolous
lawsuit," Amended Complaint at para. 258, that is what they
mean: Melone referred her to legal counsel.

As an aside, the court notes that although the Buttons
acknowledge that Melone did not represent Jane Doe in the Nevada
Litigation, they nonetheless claim that Melone "drafted Jane
Doe's fraudulent complaint against the Plaintiffs."  Amended
Complaint at paras. 109, 379.  Melone denies that allegation
(and she is not listed as counsel of record in the Nevada
Litigation).  But, even assuming its truth for purposes of
ruling on the pending motions to dismiss, Melone would be
entitled immunity for such conduct.  See, e.g., Hugel v.
Milberg, Weiss, Bershad, Hynes & Lerach, LLP, 175 F.3d 14, 16
(1st Cir. 1999) (noting that New Hampshire law provides broad
absolute immunity for statements made in judicial proceedings,
to include allegations published by attorneys in a civil
complaint).

Finally, the court notes that the Buttons have previously
litigated their claim that counsel for Jane Doe knowingly filed

false and defamatory statements on behalf of Jane Doe.  The
federal court in Nevada has repeatedly rejected that claim.  <u>See</u>
Nevada Litigation, Court Orders (documents no. 220, 360)
(denying, both initially and on reconsideration, the Buttons'
motion for Rule 11 sanctions against Jane Doe's counsel for
allegedly having filed a complaint based upon materially false
and defamatory claims).  It is reasonable to infer that the
court concluded that plaintiffs' counsel investigated Jane Doe's
claims against the Buttons, concluded that they have a factual
basis and evidentiary support, and certified to the court that
those claims were not being presented for any improper purpose.
<u>See generally</u> Fed. R. Civ. P. 11(b).  This is not the forum in
which to relitigate those judicial findings of fact.

    Based upon the allegations of the Amended Complaint, even
if true, Attorney Melone's conduct and/or her relationship with
Jane Doe did not give rise to any cognizable duty owed to the
Buttons nor, under the circumstances alleged, is it actionable
for Melone to have referred Jane Doe to an attorney for an
evaluation of potential legal claims that Jane Doe may have.
Nor would it be actionable if Melone had drafted the complaint
in the Nevada Litigation (a factual claim Melone denies and
which seems both speculative and highly unlikely).

**Conclusion**

It is beyond reasonable debate that the Buttons' various pleadings in this case (including the original complaint and the amended complaint) contain sealed, highly confidential materials from the Nevada Litigation that the Buttons submitted to this court in violation of several orders of the Nevada court.  That alone is likely sufficient grounds to dismiss their claims.  <u>See</u> Fed. R. Civ. P. 41(b).  But, turning to the merits of their claims and even charitably construing the amended complaint, it fails to plausibly allege the essential elements of any viable claims against either the Roes or Attorney Melone.  Indeed, the Buttons' claims lack any legal merit.


For the foregoing reasons, as well as those set forth in both the Roes' legal memorandum (document no. 27) and Attorney Melone's legal memorandum (document no. 28-1), all claims against Jane Roe, John Roe, and Robin Melone are dismissed.  The Roes' Motion to Dismiss (**document no. 27**) is granted, as is Attorney Melone's Motion to Dismiss (**document no. 28**).


      **SO ORDERED.**

                             _____
                             Steven J. McAuliffe
                             United States District Judge

December 17, 2024

cc:  Dusty Button, pro se
     Mitchell T. Button, pro se
     Counsel of Record