UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Dusty Button and
Mitchell Taylor Button,
     Plaintiffs

v.                                  Case No. 24-cv-220-SM-AJ
                                    Opinion No. 2025 DNH 051

Katherine Thonis,
     Defendant


**O R D E R**


By order dated December 17, 2024, the court dismissed all of plaintiffs' claims against John Roe, Jane Roe, and Robin Melone (document no. 47) ("Button I").  Six common law claims remain against the sole remaining defendant, Katherine Thonis. Thonis now moves to dismiss those claims, asserting that none plausibly states the essential elements of a viable cause of action.  See generally Fed. R. Civ. P. 12(b)(6).  For the reasons discussed below, as well as those discussed in Button I, that motion to dismiss is granted.


**Background**

The factual background to this case, as well as the pertinent standard of review, are described in detail in Button I and need not be repeated.  It is sufficient to note the

following.  This case has its origin in civil litigation currently pending in the United States District Court for the District of Nevada.  See Humphries, et al. v. Button, Case no. 2:21-cv-01412-APG-VCF (the "Nevada Litigation").  In that case, six women claim to have been victims of sexual exploitation and assault at the hands of both Dusty Button and Taylor Button – the plaintiffs in this case.  One of those six plaintiffs, "Jane Doe 1," alleges that the Buttons raped her approximately ten years ago, when she was a minor.  See Nevada Litigation, Third Amended Complaint (document no. 221), at para. 147.

In their Amended Complaint in this litigation (document no. 26), the Buttons say that Katherine Thonis was Jane Doe's mental health therapist at the time of the alleged rape.  Id. at para. 74.  They claim that based upon her relationship with Jane Doe, Thonis knew that Jane Doe's sexual assault claims in the Nevada Litigation are false.  And, say the Buttons, Thonis breached a duty owed to them to prevent Jane Doe from spreading those false claims.  Alternatively, the Buttons claim that if Thonis actually believed Jane Doe's allegations of sexual assault were true, she had (but breached) a statutory duty – again, allegedly owed to the Buttons – to report those allegations to law enforcement authorities.  See Id. at paras. 204-05.  Oddly enough, the Buttons say they filed a police report against

Thonis for having failed to report Jane Doe's allegations of sexual assault.  See Id. at paras. 185, 198, and 201.[1]

In their Amended Complaint, the Buttons advance six claims against Thonis:

Count 1   Negligence: Thonis breached her duty to protect the Buttons from harm caused by Jane Doe's false accusations in the Nevada Litigation;

Count 2   Aiding and Abetting Fraud: By her inaction, Thonis assisted Jane Doe in committing "fraud" against the Buttons and the Nevada court – that is, Thonis failed to prevent Jane Doe from joining the ongoing Nevada Litigation;

Count 3   "Breach of Duty": Like count one, this count alleges that Thonis breached her duty to protect the Buttons from harm caused by Jane Doe's allegations in the Nevada Litigation;

Count 4   Tortious Interference with Business Relations: Thonis's failure to prevent Jane Doe from joining the Nevada Litigation interfered with the Buttons' existing and prospective business relationships, resulting in financial losses;

---

[1]   Although it is not entirely clear, the Buttons seem to reason that if Jane Doe told Thonis that she had been sexually assaulted by the Buttons and if Thonis believed those allegations were true, Thonis would have reported Jane Doe's claims to police.  That Thonis did not make any such police report is, according to the Buttons, evidence that either: (a) the sexual assaults never happened; or (b) if Thonis was aware of Jane Doe's allegations, she did not believe them.  Why the Buttons felt it necessary to file a police report that implicated themselves is unclear.

3

    Count 5    <u>Negligent Infliction of Emotional Distress</u>: Thonis breached various duties allegedly owed to the Buttons and caused them severe emotional distress; and

    Count 7    <u>Civil Conspiracy</u>: Thonis engaged in a concerted effort to harm the Buttons by "concealing" Jane Doe's "fraud" and failing to prevent her from spreading information through the Nevada Litigation.

In short, all claims advanced by the Buttons arise out of: (a) Thonis's alleged failure to prevent Jane Doe from joining the civil litigation in Nevada, where she advanced her allegedly false rape claim; and/or (2) Thonis's failure to warn the Buttons of Jane Doe's allegations.  The Buttons do not claim that Thonis misdiagnosed Jane Doe as a victim of sexual assault, nor do they assert that Thonis played an active role in encouraging Jane Doe to contact an attorney, make her allegations against the Buttons public, or participate in the Nevada Litigation.  Rather, all claims against Thonis turn on her alleged failure to take any action to protect the Buttons from the harm they claim to have suffered as a result of Jane Doe's public accusations in the Nevada Litigation.

### Discussion

I.    <u>The Buttons' Negligence Claims</u>.

    The lynchpin to the Buttons' negligence and breach of duty claims is their assertion that Thonis – as Jane Doe's therapist

– owed a duty to the Buttons: (a) to report to law enforcement officials Jane Doe's claim that she was raped by the Buttons (if Thonis actually believed Jane Doe's allegations were true); or, alternatively, (b) to warn the Buttons of those claims (if Thonis believed Jane Doe's allegations were not true). According to the Buttons, Thonis did neither and they were harmed as a consequence.

New Hampshire law provides that any therapist, medical professional, "or any other person having reason to suspect that a child has been abused or neglected shall report the same in accordance with this chapter."  N.H. Rev. Stat. Ann. ("RSA") 169-C:29.  Such a report shall be filed with the New Hampshire Department of Health and Human Services.  RSA 169-C:30. Importantly, however, the Amended Complaint fails to plausibly allege that the reporting duty established in RSA ch. 169-C is owed to third parties, such as the Buttons – particularly when the third parties are themselves the alleged abusers.  More importantly, however, RSA ch. 169-C does not vest the Buttons with a viable private right of action against Thonis for her alleged breach of statutory reporting obligations.  See Berry v. Watchtower Bible & Tract Soc. of New York, Inc., 152 N.H. 407, 411 (2005) ("The child abuse reporting statute does not give rise to a civil remedy for its violation.  Failure to comply

5

with the statute is a crime and anyone who knowingly violates any provision is guilty of a misdemeanor. The reporting statute does not, however, support a private right of action for its violation.") (citation and internal punctuation omitted).

Of course there are circumstances in which a therapist <u>does</u> owe a common law duty of care to specific third parties when treating a patient for sexual abuse. Those circumstances are, however, narrowly circumscribed:

> a therapist owes <u>an accused parent</u> a duty of care in the diagnosis and treatment of an adult patient for sexual abuse where the therapist or the patient, <u>acting on the encouragement, recommendation, or instruction of the therapist</u>, takes public action concerning the accusation.
>
> \* \* \*
>
> The <u>duty of care to the accused parent</u> is breached by the therapist when the publicized <u>misdiagnosis</u> results from (1) use of psychological phenomena or techniques <u>not generally accepted in the mental health community</u>, or (2) <u>lack of professional qualification</u>.

<u>Hungerford v. Jones</u>, 143 N.H. 208, 215 (1998) (emphasis supplied).

The most notable problem with Buttons' Amended Complaint is this: the New Hampshire Supreme Court has not recognized any common law duty on the part of therapists to third parties –

6

such as the Buttons – who are not the patient's parents. See id. ("We offer no opinion concerning whether the scope of the duty may include third parties other than a patient's parents."). And, the Buttons have failed to persuasively argue that this court should recognize such a duty based upon a prediction of how the New Hampshire Supreme Court might one day rule. See generally Kassell v. Gannett Co., 875 F.2d 935, 949–50 (1st Cir. 1989) ("Where a directly pertinent precedent of the state's highest court obtains, a federal court applying state law must be hesitant to blaze a new (and contrary) trail. Absent more solid evidence than is available here, a diversity court must take state law as it finds it: not as it might conceivably be, some day; nor even as it should be.") (citations and internal punctuation omitted).

If more were needed, the Amended Complaint fails to allege that Thonis misdiagnosed Jane Doe as being the victim of sexual assault, based upon either the lack of professional qualifications or the use of counseling techniques that are not generally accepted in the mental health community. Nor do the Buttons claim that Thonis "encouraged," "recommended," or "instructed" Jane Doe to join the Nevada Litigation or to go public with her sexual assault claims. Such factual allegations are essential elements of any viable breach of duty claim

7

against a therapist.  See Hungerford, 143 N.H. at 215.  Instead, the amended complaint merely alleges that "Thonis could have and should have prevented her client from causing harm upon Plaintiffs [but] did not."  Amended Complaint at para. 43.  Such claims of inaction and passivity are plainly insufficient to state a viable cause of action under New Hampshire common law.  See Hungerford, 143 N.H. at 213, 215.

Finally, the court notes that much of the Buttons' case against Thonis seems to rest upon their claim that Thonis "lied" to them when, in response to a phone call from the Buttons inquiring about her treatment of Jane Doe, Thonis allegedly said she had "no idea" what the Buttons were talking about.  That "lie," say the Buttons, "proves" that Thonis knew Jane Doe's claims in the Nevada litigation are false.

> It is proven that Ms. Thonis knew and knows the allegations Jane Doe made against the Plaintiffs are false because she directly stated she "had no idea" what the Plaintiffs were talking about when the Plaintiffs called her to address the allegations against them, made by her client, which her client alleged she told her of.
>
> Ms. Thonis did not warn the Plaintiffs prior to Jane Doe's "entrance" into the Nevada litigation or when the Plaintiffs spoke to her on the phone and she alleged that she had "no idea" what the Plaintiffs were talking about; therefore, even if Ms. Thonis did not know Jane Doe would bring frivolous civil action against the Plaintiffs, and cause them harm, nine years after she was first made aware of the

8

> allegations against the Plaintiffs in 2012, Ms. Thonis <u>intentionally lied to the Plaintiffs when she stated she "had no idea" what the Plaintiffs were talking about</u> and that her sessions with Jane Doe were "a long time ago" - both statements which are provenly false by Jane Doe.

Plaintiffs' Objection to Motion to Dismiss (document no. 65), at 10-11 (emphasis supplied).

Thonis had no legal duty to respond to the Buttons' inquiries about a former patient. Nor was she obligated to even acknowledge her professional relationship with Jane Doe. Her failure/refusal to answer the Buttons' questions (or even her allegedly misleading response) does not give rise to any viable claim under New Hampshire law. Nor does Thonis's response to the Buttons' inquiry "establish" that Thonis "knew" Jane Doe's allegations of sexual assault were false.

II.  <u>Remaining Claims</u>.

The remaining claims asserted in the Amended Complaint – that is, aiding and abetting fraud; tortious interference with business relations; negligent infliction of emotional distress; and civil conspiracy – all fail to plausibly allege the essential elements of viable claims, largely for the reasons discussed in the court's prior opinion (<u>Button I</u>) and those

9

presented in Thonis's legal memoranda.  Those reasons need not be reiterated.

## Conclusion

As the court noted in Button I, "It is beyond reasonable debate that the Buttons' various pleadings in this case (including the original complaint and the amended complaint) contain sealed, highly confidential materials from the Nevada Litigation that the Buttons submitted to this court in violation of several orders of the Nevada court." Id. at 18.  The Buttons' entire case before this court is based upon factual claims and documents that were disclosed in the Nevada Litigation and that the Nevada court explicitly ordered them to keep confidential and prohibited them from using in any other litigation.  See, e.g., Nevada Litigation, Order dated November 21, 2024 (document no. 421), at 2 (noting that the court's sealing orders made "clear that once such information is obtained it cannot be used for any purpose other than this litigation.  Said plainly, this Court's Orders establish that certain information disclosed in this case cannot be used in other cases even when related and in federal court.").  The Buttons knowingly and willfully violated those multiple court orders.  Such defiant conduct alone is likely sufficient to

warrant dismissal of the Buttons' amended complaint.  <u>See</u> Fed. R. Civ. P. 41(b).

Indeed, although the Nevada court acknowledged that it could "not issue an Order directing the District of New Hampshire to take any particular action," it did exercise its inherent authority to sanction the Buttons for their repeated defiance of its sealing orders.  Specifically, it ordered the Buttons to reimburse the Nevada plaintiffs more than $23,000 in attorney's fees associated with their preparation of various pleadings (including a "Motion for Case Ending Sanctions") in response to the Buttons' conduct in this forum.  <u>See</u> <u>Nevada Litigation</u>, Order dated February 14, 2025 (document no. 479) and Order dated March 20, 2025 (document no. 493).

Even if the Buttons' repeated and willful defiance of unambiguous court orders were not sufficient grounds for dismissal under Rule 41(b), it is plain that the Amended Complaint fails to plausibly allege the essential elements of any viable claims against Jane Doe's therapist, Katherine Thonis.

For the foregoing reasons, as well as those explained in both <u>Button I</u> and Thonis's legal memoranda (documents no. 52 and

11

67), Katherine Thonis's Motion to Dismiss (**document no. 52**) is granted.  The Motion to Seal submitted by the Roe defendants (**document no. 38**), as well as the Motion to Seal submitted by Thonis (**document no. 40**) are denied as moot.  The documents subject to those sealing requests (documents no. 11, 11-1, 16, 22, 28, 28, 28-1 and 36) have already been sealed in accordance with this court's prior orders, including the order dated October 25, 2024 (document no. 37).

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 11, 2025

cc:  Dusty Button, pro se
     Mitchell T. Button, pro se
     Counsel of Record